## Horace Galpin v. James Abbott and Others.

The record of a deed not executed in conformity with the recording laws is notice to no one.

Where, under the Code of 1833, a deed of lands within the territory of Michigan was proved or acknowledged in the state of New York, it was not necessary, to entitle the deed to record within the territory, that the acknowledgment be accompanied by a county clerk's certificate, proving the official character and signature of the officer taking the acknowledgment.

Under the Code of 1833, to entitle a deed acknowledged or proved out of the territory to be recorded within it, it was necessary that it be *executed and witnessed* in the same manner that deeds acknowledged within the territory were required to be, though the *proof or acknowledgment* might be in accordance with the laws of the state or territory where it was taken.

*Heard October 15th, 19th, and 20th. Decided November 13th.*

Appeal from Wayne Circuit in Chancery.

The bill was filed in the court below to redeem certain premises in the city of Detroit from a mortgage. It sets forth that on the 3d day of July, 1835, James Abbott, being the owner of said premises, conveyed the same to Francis G. Macy, for the consideration of $5,000, and the deed thereof was duly recorded: That, soon after said conveyance, Macy left Michigan, and has not since resided therein, and has been entirely ignorant of any use which may have since been made of said lots, and that he gave no assent to any such use: That, on receiving such conveyance, Macy gave a mortgage back to Abbott, executed and re-

corded in due form, to secure the payment of $4,000 of the purchase money, in four equal annual installments, with interest:

That on the 4th day of August, 1835, Macy being still the owner of said premises, subject to the mortgage, gave a warranty deed of a one-fourth undivided interest therein, to one Freeman Dodd, which latter deed was recorded in the office of the register of deeds of the city of Detroit, on the 9th day of October, 1835; that said Dodd never resided in Michigan, and never assented to, or knew of, any occupancy or use of said lots adverse to himself:

That on said 4th day of August, 1835, Macy being still the owner of a three-fourths interest in said premises, subject to said mortgage, gave a warranty deed of an undivided one-half interest therein to Joseph Hoxie; which last deed was recorded in the office of the register of deeds of the city of Detroit, on the 9th of October, 1835; and that said Hoxie never resided in Michigan, and never assented to, or knew of, any use or occupancy of said premises adverse to himself:

That on the 1st of November, 1837, Macy mortgaged his remaining one-fourth interest to the Farmers' and Mechanics' Bank of Michigan, which latter mortgage was by the bank subsequently assigned to Messrs. Trowbridge, Stuart, and Owen, and by them to G. V. N. Lothrop. Mr. Lothrop was made a party defendant, and allowed the bill to be taken as confessed.

The bill further states that the first and second installments of the mortgage given by Macy to Abbott, were duly paid; that the third and fourth installments remaining unpaid, Abbott, in or about the month of August, 1839, filed his bill to foreclose the said mortgage, in the then Court of Chancery for the first circuit of the State of Michigan; that such proceedings were thereupon had in said foreclosure suit that, on January 12th, 1841, said premises were sold by a master, pursuant to a decree of said court, to said Abbott,

for two hundred dollars, and a master's deed given there-for, which was recorded February 4th, 1841, in the register's office of Wayne county. The master made his report, which was confirmed by the court January 12th, 1841, and a decree entered against Macy for the balance:

That said Abbott was sole complainant, and Macy sole defendant in said foreclosure suit, although Abbott well knew, and had due notice, in law and in fact, of the conveyances to Dodd and Hoxie, and of the mortgage to said Farmers' and Mechanics' Bank, so that the rights, interests and equities of said parties, and their assigns, were wholly unaffected by said foreclosure proceedings; that Dodd and Hoxie had no notice of said foreclosure proceedings, nor did they in any way assent thereto, or to any conveyances or occupancy of said lots, since the conveyance thereof by Macy, as aforesaid:

That on the 4th of August, 1842, Abbott gave a warranty deed of said premises to John Winder, but neither Abbott nor Winder ever took or had any actual or legal possession after the said deed to Macy; or if they ever took possession, it was not till the year 1845:

That in 1852, Winder caused said premises to be surveyed and platted into city lots, and several persons became interested therein by purchase, who are made parties defendant to the bill:

That on the 4th day of October, 1854, said Hoxie, being still the owner of a one-half undivided interest in said premises, conveyed the same by deed, executed in due form, to the complainant; which deed was duly recorded:

That on or about January 8th, 1839, Dodd assigned all his interest in said premises to John Stevens and William Emerson, and the survivor of them, in trust for Dodd's creditors, with full power in the assignees to sell the same as they should see fit; that said assignees accepted the trust, and took on themselves its execution; that Stevens subsequently died, whereupon the title of Dodd in the property became vested in Emerson, the surviving assignee:

That on the 21st day of July, 1842, the said Dodd filed his petition in the District Court of the United States for the Southern District of New York, sitting in bankruptcy; and, pursuant to the statute and the practice of said court, he was duly declared a bankrupt by said court, September 5th, 1842; and W. C. H. Waddell, who was the general assignee in bankruptcy appointed by said court, became the owner of all the property of said Dodd, from the date of said decree:

That Waddell, on March 17th, 1855, pursuant to the order and direction of said court in bankruptcy, sold and conveyed to the complainant all the right and interest which he had in the premises, as assignee of Dodd, and by virtue of said decree in bankruptcy:

That after the death of said Stevens, assignee of Dodd as aforesaid, said Emerson, his survivor, on June 6th, 1855, sold and conveyed to the complainant all the interest he had in said premises, as assignee of Dodd, and as survivor of Stevens. And the bill charges that neither Stevens nor Emerson knew any thing of the foreclosure suit of Abbott against Macy, nor had notice of any conveyances, occupancy, or improvements, from and under Abbott and his assigns thereafter:

And complainant claimed, by virtue of said several conveyances, to be the owner in fee simple of an undivided three-fourths of said premises, subject only to said Macy mortgage.

Winder, and the several defendants deriving title under him, claimed to be purchasers in good faith under the proceedings had for the foreclosure of the Macy mortgage, and without any notice of the Dodd and Hoxie deeds, and insisted that the right of Macy and his grantees to redeem was extinguished by such foreclosure proceedings.

The cause having been put at issue, testimony was taken, of which it is only necessary to notice that relating to the Dodd and Hoxie deeds. These were both executed in the

GALPIN v. ABBOTT.

city of New York, in 1835, and acknowledged before a commissioner of deeds, in all respects in conformity with the then laws of New York, and each had a single subscribing witness, who was the officer taking the acknowledgment: no. county clerk's certificate was attached, showing the official character and signature of the commissioner. The deeds were recorded in the office of the register of deeds of the city of Detroit, on the 9th day of October, 1835; and the principal question in the case was, whether, having but one subscribing witness, and wanting such clerk's certificate, they were authorized, under the laws of the territory of Michigan, then in force, to be recorded, so that their being placed on record was constructive notice to Abbott and those claiming under him. There was no proof that Abbott had actual notice of these deeds at the time of the foreclosure.

*L. Bishop* and *C. I. Walker*, for complainant:

1. The record of conveyances, when authorized by law, is notice to the world of all rights and interests under them.

2. The Dodd and Hoxie deeds were executed and acknowledged in strict conformity to the laws of New York, and were therefore authorized to be recorded here under the act of 1827, embraced in the Code of 1833. This act did not specify what evidence should be deemed sufficient that a deed has been executed according to the foreign law, when it is presented to a register for record; and this defect is made the subject of comment by the Supreme Court in *Ives v. Kimball*, 1 *Mich.* 308. But it may be presumed, as say the Court, that the register did his duty, and that he had the proper evidence before him. — *Ewing's heirs v. Savary,* 3 *Bibb,* 287; *Hope v. Sawyer,* 14 *Ill.* 254. A register of deeds might record any deed which appeared to have the proper form, leaving the questions, whether it was *properly recorded,* and whether it was notice to subsequent purchasers, to be determined when they should arise. — *Talbot's lessee v. Simpson, Pet. C. C.* 188, 189.

3. Defendants claim that deeds executed out of the territory must conform not only to sec. 7, but also to sec. 1, of the act of 1827, and therefore that such deeds must have two witnesses, whether the law of the place where executed required them or not; and that they must, in all respects, be in accordance with all the provisions of our statute, and also with the *laws and usages* of the place where executed. To this most unnatural and forced construction of the statute we answer:

It is contrary to the plain and obvious intention of the Legislature, which must prevail, so that professional criticism shall not be necessary to understand it.—23 *Pa. St.* 231.

Nothing can be more manifest than that two classes of conveyances were intended to be provided for; that secs. 1 and 2 should cover the first class, composed of deeds executed in the territory, and sec. 7 the other class, composed of such as should be executed in other states and countries.

The object of the latter section was to facilitate the making of deeds of lands situated here, in parts of the world where the local law of Michigan might not be known.— *DeSegond v. Culver*, 10 *Ohio*, 191.

Sec. 8 of the act of 1820, which is incorporated into sec. 7 of the act of 1827, provides that all deeds which *had been* executed in other states and countries, according to the *laws and usages* thereof, should be confirmed; and they are declared to be as valid and effectual, to all intents and purposes, as though they had been acknowledged and proved in the territory.

From this clause we gather,—

*First*, That down to 1820, there was no law or statute which authorized a deed of lands here to be executed out of the territory; and,

*Second*, That foreign deeds were not intended, nor expected, to conform to the statute as to domestic deeds.

Why are deeds executed in other states, before and after the statute, classed together in the same section, and both

GALPIN *v.* ABBOTT.

placed on the same footing? Why are the former deeds confirmed? And why are they not required to conform to sec. 1, as to two witnesses? There can be but one answer.

It is clear that sec. 1, which is general, relates only to deeds executed in Michigan, while sec. 7, being special, has reference only to such as might be executed elsewhere. This view is sustained by sec. 2, which specifies the officers before whom *such deeds* (before named in sec. 1) may be acknowledged or proved; and these officers can, of course, be only such as hold office under the laws of Michigan. Special provisions of a statute, relating to a particular subject or class, will not be controlled or affected by general provisions on the same general subject. — *United States v. Weise,* 2 *Wall. Jr.* 72; *Jones v. Jones,* 18 *Me.* 308; *Ottawa v. LaSalle Co.* 12 *Ill.* 339; *Rex v. Archbishop of Armagh,* 8 *Mod.* 8.

It is said that sec. 1 provides the mode in which all deeds shall be executed, and that sec. 7 only relates to the forms of authentication of foreign conveyances when they shall have been executed with two witnesses and according to sec. 1. But "statutes are to be construed in reference to the principles of the common law; and it is not to be presumed that the Legislature intended to make any innovation on the common law, further than the case absolutely required.' — 1 *Kent,* 464; *Whitcomb v. Rood,* 20 *Vt.* 49; *State v. Mace,* 5 *Md.* 337; *U. S. v. Magill,* 1 *Wash. C. C.* 463; *State v. Norton,* 3 *Zab.* 33; *Adams v. Terrentine,* 8 *Ired.* 147. Now, sec. 1 speaks of deeds and other conveyances signed and sealed, and sec. 7 speaks of deeds and conveyances made and executed.

The word *deed* has a fixed and definite signification at common law. It "is a writing sealed and delivered by the parties." Independent of statutes, a deed requires no subscribing witness. — 4 *Kent,* 451, 452; *Forsaith v. Clark,* 1 *Fos.* 409; *Dole v. Thurlow,* 12 *Metc.* 157, 165; *Long v. Ramsay,* 1 *S. & R.* 72; *Jackson v. Wood,* 12 *Johns.* 73; *Moore v. Vance,* 1 *Ohio,* 1; *Wilkins v. Wells,* 9 *S. & M.* 335.

GALPIN *v.* ABBOTT.

When, therefore, the Legislature, in sec. 1, speak of a deed signed and sealed, and, in sec. 7, of a deed made and executed, they mean the same thing—"a writing sealed and delivered by the parties." Such is the long settled meaning at common law of the terms they use; which meaning was not changed, as there was no necessity for innovation, either in the subject or in the object of the legislation.

We have accordingly, under both sections, deeds fully executed, without witness, acknowledgment, proof, or certificate. The sections are alike in this respect, and the latter requisites relate to the forms of authentication only. We thus see the object of this statute; that these forms might be different in domestic and foreign deeds, and that in the latter they might vary so as to conform to the different local laws where they might be executed.

Again: Sec. 1 contains no negative words. It is declared that a deed in the form there prescribed shall be good and valid, but it is not declared that deeds in the ordinary form shall not be valid. These affirmative provisions are merely directory.—*French v. French,* 3 *N. H.* 234, 256, 263; *Stone v. Ashley,* 13 *N. H.* 38; *Dole v. Thurlow,* 12 *Metc.* 157; *People v. Cook,* 14 *Barb.* 259; *Long v. Ramsay,* 1 *S. & R.* 72; *Strong v. Smith,* 3 *McLean,* 362; *Milligan v. Dickson, Pet. C. C.* 438, 439; *Hammond v. Alexander,* 1 *Bibb,* 333; *Dougherty v. Randall,* 3 *Mich.* 581.

A conveyance, signed, sealed, and delivered as a deed, would be good, as between the parties, notwithstanding the statute, and it would be a monstrous distortion to construe the first section as excluding every other form, when a far more natural construction would give sec. 7 an exclusive operation as to foreign deeds.

Nor do secs. 2 and 4 help defendants. Sec. 2 opens with the words, "All such deeds"—referring, of course, to sec. 1; and it makes no allusion to sec. 7, or to deeds executed in other states. The officers in this section are, of course, none other than public officers of the territory of Michigan.

GALPIN v. ABBOTT.

The first subdivision of sec. 4 refers expressly to deeds by married women residing in this territory; and the words, "taken in manner aforesaid," can refer only to the previous secs. 1 and 2. The seventh section has no such connecting links as these with the first section.

The second subdivision of sec. 4 refers expressly to deeds by married women, not residing in this territory; and these, therefore, come under sec. 7. It will be noted that the words "all such deeds," as found in sec. 2, and "taken in manner aforesaid," found in the first part of sec. 4, are carefully excluded from the last part of sec. 4. This fact will appear very significant when we come to compare the whole legislation of the state on the subject. It will be found far from accidental.—*Fowler v. Tuttle*, 4 *Fos.* 9.

Again: When we come to sec. 6 we find the same absence of all words having reference to sec. 1, or any other section; and all deeds entitled to be recorded by virtue of this act, are provided for. Deeds made pursuant to sec. 1, or pursuant to sec. 7, had the same equal right to record.

*D., S. A. & D. Goodwin*, and *A. D. Fraser*, for defendants:

There is no evidence in the case of any conveyances from Macy to either Dodd or Hoxie.

By the legislation of Michigan, at the time of the execution of these instruments, two witnesses were required to make them valid, as conveyances of real estate. All deeds were required to be attested by two witnesses by the original Ordinance of 1787.

By the act of the Legislative Council of the territory of Michigan, of April 12th, 1827, all conveyances of real estate lying in the territory must be signed and sealed by the grantors, and signed by two or more witnesses, and proved, and acknowledged, and recorded, to be valid. Sec. 2 provides how such deeds shall be proved or acknowledged within the state to entitle them to be recorded, and sec. 6 provides when such record shall be evidence.

6 MICH.—C.

Sec. 7 provides, as to deeds executed in another state, that they shall be acknowledged, proved, and certified in conformity with the laws of that state, and shall be as valid as if proved or acknowledged according to the laws of Michigan. This statute continued in force until the Revised Statutes of 1838, by which witnesses were dispensed with, but again required by the act of April 29th, 1839, and by all subsequent enactments.

The instruments purporting to be executed August 4th, 1835, by Macy to Dodd and Hoxie, are not, then, valid deeds — being signed by only one witness — for want of conformity to the statute requirements in the mode of execution under the act of April 12th, 1827.

It will also be seen by sec. 7 of the same act, that in the case of land lying in Michigan, deeds therefor "made and executed" in another state, "shall be acknowledged, and proved, and certified, according to, and in conformity with, the laws and usages" of the state in which they shall be acknowledged or proved.

The statute of New York in force at the time these deeds were executed, did not authorize the record of a deed in any county except that in which the officer resided, when the acknowledgment was taken before a commissioner, without its being "certified by the county clerk under his seal of office," "specifying" that the commissioner "was duly authorized to take the same," and that the signature to his certificate was genuine. — *R. S. of N. Y.* 1830, *vol.* 1, *p.* 746, *sec.* 4, *sub.* 1; *p.* 749, *sec.* 18.

The case of *Ives v. Kimball,* 1 *Mich.* 308, presented a different point. The objection there was not the absence of the certificate, but that the fact should be proved at the trial. The court, in that case, and in *Lacy v. Davis,* 4 *Mich.* 150, appear to have overlooked the fact that, by sec. 7 of the Michigan statute, the deed should be acknowledged and certified in conformity with the laws of New York, and that by sec. 18 of the New York statute, such a deed could not be recorded in any other county in the state, without

being "certified" by the county clerk, if taken by a commis-sioner, or a county judge not a counsellor.

The deeds being defective in the statute requirements as to execution, the record was wholly unauthorized and void, and is no evidence of the execution of such deeds, and no notice to Abbott or his grantees.

The same consequence will follow, if our position be cor-rect, that these deeds were not so "acknowledged and certi-fied" as to entitle them to be recorded. — *Wing v. McDowell*, Walk. Ch. 175; *Courcier v. Graham*, 1 Ohio, 330; *Patterson v. Pierce*, 5 Ohio, 190; *Marvin v. Camp*, 3 Conn. 35; *Carter v. Champion*, 8 Conn. 549; *Sumner v. Rhoades*, 14 Conn. 135; *Godfrey v. Disbrow*, Walk. Ch. 260; *Duphey v. Frenage*, 5 Stew. & P. 215; *Fenno v. Sayre*, 3 Ala. 458; *White v. Wheaton*, 16 Conn. 530; *Grimstone v. Carter*, 3 Paige, 438; *Clark v. Graham*, 6 Wheat. 577; *Shultz v. Moore*, 1 McLean, 520; 19 Vt. 230; *Choteau v. Jones*, 11 Ill. 300; *Pope v. Henry*, 24 Vt. 360; *John v. Scott*, 5 Md. 81; *Moore's executors v. Auditor*, 3 Hen. & M. 235.

*S. T. Douglass*, on same side:

The statute made three things requisite to the validity, even as between the parties, of all conveyances of lands in the territory; namely, signing and sealing by the grantor, and attestation by *two witnesses*. We say requisite, because, although there are no negative words in the first section, but it merely enacts that all conveyances executed in ac-cordance with its provisions shall be valid, yet such stat-utes are construed, in effect, to declare that lands can not be conveyed in any other manner. — 4 *Port. Ala.* 324; 6 *Wheat.* 557; 1 Ohio, 330; *Ibid.* 6; 5 Ohio, 190; 19 Ohio, 24; *Walk. Ch.* 265; 23 Vt. 600; 14 N. H. 395; 6 O. S. R. 585.

To make a deed valid as against subsequent purchasers or mortgagees for valuable consideration (without notice?), it was also requisite, 1st, That it should be acknowledged by the grantor, and the officer's certificate of that fact en-dorsed; or, 2d, That the execution and attestation thereof

should be *proved* and certified as provided by the statute; and 3d, That it should be recorded. The signing, sealing, attestation, and acknowledgment or proof, were each pre-requisites to the recording.

The phraseology of sec. 1 of the act in question might seem, at first view, to indicate that the acknowledgment or proof, and the recording, as well as the signing, sealing and attestation, were essential to the validity of the con-veyance for any purpose, but a different construction has always been given to this and similar statutes.—6 *Mass.* 24; 12 *Metc.* 162; 6 *Pet.* 135.; *Walk. Ch.* 264.

Sec. 1, in plain terms, embraces and prescribes the requi-sites of all conveyances of lands in the territory, whether executed here or elsewhere, leaving the details as to how and before whom they should be acknowledged or proved, and when and where recorded, to be provided for in subsequent sections. There is nothing in any of the subsequent provi-sions to limit the generality of the language of this section, or in any way inconsistent with the construction we give it. Sec. 7 does not purport to prescribe how deeds shall be exe-cuted out of the territory, but merely how they shall be *acknowledged,* or *proved* and *certified,* as to, which there was a necessity for some special provision. It does not declare such deeds as effectual and valid in law as though the exe-cution thereof, or the *execution and acknowledgment* thereof had been in acccordance with the laws of the territory, but only that they shall be "as effectual and valid as though the same *acknowledgments* had been taken, or *proof* of execution made, within this territory, and in pursuance of the laws thereof." The construction, claimed on the other side, requires us to import into sec. 7 language not to be found there, and which would be inconsistent with sec. 1.[*]

---

[*] It was argued with much ability, by the counsel on each side of this case, that the prior, as well as subsequent, legislation on the subject of conveyances, threw light upon the particular point under discussion here, and justified the construction put by each upon the provision in question. A reference, in this place, to the prior legis-lation upon this subject, may possibly be of interest to the profession.

'GALPIN *v.* ABBOTT.

CHRISTIANCY J.:

The main question in this case is, whether the two deeds from Macy to Dodd and Hoxie respectively, dated August 4th, 1835, acknowledged the same day, and recorded in the office of the register of deeds in the city of Detroit, October 9th, 1835, were so executed, attested, and acknowledged, as to be entitled to record under the then existing laws of the territory. If entitled to be recorded, the record was notice to all the world of the title of Dodd and Hoxie, and they should have been made parties to the foreclosure suit; and not having been made parties, they were

The post of Detroit was surrendered to the British authorities in the capitulation of Montreal, September 8th, 1760. Formal possession was taken the twenty-ninth of November following, and jurisdiction ceded by the treaty of peace between Great Britain and France of February 10th, 1763.

By the Ordinance of 1787, real estate in the Northwest Territory might be "conveyed by lease and release, or bargain and sale, signed, sealed, and delivered by the person, being of full age, in whom the estate may be, and attested by two witnesses, provided" "such conveyances be acknowledged, or the execution thereof duly proved, and be recorded within one year after the proper magistrates, courts, and registers shall be appointed for that purpose."

In *Lessee of Lindsley v. Coats*, 1 *Ohio*, 243, it was held that the ancient common law conveyances, as such, had never been adopted in this territory, and that, by the Ordinance of 1787, it was not the intention of Congress merely to legalize those modes of conveyance which are mentioned in the Ordinance, leaving it at the option of owners of real estate within the territory, upon the sale of their lands, to convey the same either by the ancient common law mode of feoffment with livery of seizin, or by deed duly executed as provided by the Ordinance, but to provide that every conventional transfer of real estate, by vendor to vendee, should be by the latter mode only.

'Section eight of "A law establishing the Recorder's Office," published by the Governor and Judges of the Northwest Territory, June 18th, 1795, to take effect August 1st, 1795 '(1 *Chase's Statutes*, 167), provides that "All deeds and conveyances which shall be made and executed within this territory, of or concerning any lands, tenements, or hereditaments therein, or whereby the same may be in any way affected, in law or equity, shall be acknowledged by one of the grantors or bargainors, or proved by one or more of the subscribing witnesses to such deed, before one of the judges of the General Court, or before one of the justices of the Court of Common Pleas of the county where the lands conveyed do lie, and shall be recorded in the recorder's office of the county where such lands or hereditaments are lying and being, within twelve months after the execution of such deeds or conveyances; and every such deed and conveyance that shall, at any time after the publication hereof, be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim."

Section nine of the same act provides 'for proving deeds when the grantors and

GALPIN *v.* ABBOTT.

not bound by the decree, and they or their grantees would'
now be entitled to redeem. But if not entitled to record,
then, though recorded in fact, the record is notice to no one,
and Dodd and Hoxie, and their grantees, are barred of all
rights of redemption by the foreclosure against Macy alone;
all the mortgaged premises having been purchased by the
other defendants from Abbott, and neither he nor his
grantees having any notice of the titles in question, aside
from the record.

These deeds purport to have been executed in the state
of New York, and each has but a single witness, who is
the same person before whom the acknowledgment was taken.

witnesses were dead, or could not be produced.

In *Abbott v. Godfroy's Heirs,* 1 *Mich.* 178; it is *said,* by the Supreme Court, that, as Michigan, remained under British jurisdiction, until 1796, the Ordinance of 1787 (and the rule would be the same as to the territorial enactments) was not in force here until that time. How far the laws before in force here ceased to have effect with this change of jurisdiction, or at what time thereafter any particular statute or custom was impliedly superseded by American legislation, will not be discussed here. There was no formal repeal of the former laws until September 16th, 1810, when, by an act of the Governor and Judges of Michigan, the acts of the Parliament of England, and of the Parliament of Great Britain, the Coutume de Paris, or ancient French Common Law, existing in this country, the laws, acts, ordinances, arrets, and decrees of the Governors and other authorities of the Province of Canada, and of the Province of Louisiana, under the ancient French Crown, and of the Governors, Parliaments, or other authorities of the Province of Canada, and of Upper Canada, under the British Crown, the laws adopted and made by the Governor and Judges of the Territory of the United States Northwest of the river Ohio, and the laws made by the General Assembly of the said territory, and the laws adopted and made by the Governor and Judges of the territory of Indiana—were repealed,

with saving of rights accrued.—*Cass Code,* 119; *Code of* 1820, 460; *Code of* 1827, 499.

By "A Law rendering the Acknowledgment of Deeds more easy," adopted and published by the Governor and Judges of the Northwest Territory May 1st, 1798, "all grants and deeds made of houses and lands may be acknowledged before one of the judges of the territory, justice of the common pleas, or justice of the peace, any former law to the contrary notwithstanding."—1 *Chase Stat.* 210.

The act of Congress to divide the Northwest Territory into two separate governments, approved May 7th, 1800 (2 *Stat. at Large,* 58), provided that "from and after the fourth day of July next, all that part of the Territory of the United States Northwest of the Ohio River, which lies to the westward of a line beginning at the Ohio opposite to the mouth of the Kentucky River, and running thence to Fort Recovery, and thence north until its hall intersect the territorial line between the United States and Canada, shall, for the purpose of temporary government, constitute a separate territory, and be called the Indiana Territory." By the second section it was provided that there should be established in the Indiana Territory a government in all respects similar to that provided by the Ordinance of 1787, "and the inhabitants thereof shall be entitled to, and enjoy all and singular the rights, privileges, and advantages granted and secured to the people by the said Ordinance."

GALPIN v. ABBOTT.

The defendants insist that these deeds were not entitled to record, *First*, Because not properly acknowledged and certified, according to the laws of the state of New York, and the seventh section of the territorial act of Michigan, of April 12th, 1827 (*Compilation of 1833, p. 281, &c.*); and, *Second*, If duly acknowledged and certified, they could not be legally recorded, because not attested by two witnesses.

The first ground of objection we think wholly untenable. It is fully met by the decision of this court in *Ives v. Kimball*, 1 *Mich.* 308, which arose under the same law. The only circumstance which might distinguish that case from the present (as relates to this point), is, that in that case

Fort Recovery was erected on the site of St. Clair's defeat by the Indians, near the north boundary of the present county of Darke, Ohio, and some two or three miles east of the present state line between Ohio and Indiana. It will be perceived that, by this act, the eastern boundary line of Indiana Territory passed north through the present State of Michigan, some twenty miles west of the principal meridian as subsequently established, leaving the eastern portion of the present state still included in what remained the Northwest Territory.

Chillicothe was made the capital of the Northwest Territory by this act, and Vincennes of Indiana Territory, until otherwise ordered by the territorial legislative authorities.

"An Act providing for the Acknowledgment and Recording of Deeds in certain cases" (1 *Chase Stat.* 342; *Laws of N. W. Territory,* 1802, *p.* 135), adopted by the Territorial Legislature of the Northwest Territory, at Chillicothe, January 20th, 1802 (at the same session at which the towns of Detroit and Cincinnati were incorporated), was so important, and, in some respects, so peculiar in its phraseology and provisions, that it is here copied in full:

"*An Act providing for the Acknowledgment and Recording of Deeds in certain cases.*

"Whereas it has been represented to this Legislature that, in many instances, deeds and conveyances of lands, tenements, and hereditaments, situate, lying and being within this territory, have been executed, acknowledged or proved in other states and countries, in pursuance to the laws or customs in such states and countries, and whereas doubts are entertained respecting the validity and legal effect of such acknowledgments and proofs, and of the propriety of admitting such deeds and conveyances, so acknowledged and proved, to be recorded within said territory: Therefore, to remove all doubts, and to render such acknowledgments and proofs equally valid and effectual, in law, with acknowledgments and proofs of deeds made within the territory, and in strict compliance with the acts and laws thereof:

"Sec. 1. Be it enacted by the Legislative Council and House of Representatives in General Assembly, and it is hereby enacted, by the authority of the same, that all deeds and conveyances of lands, tenements, and hereditaments, situate, lying and being within this territory, heretofore executed, and which said deeds and conveyances have been, or hereafter may be, acknowledged or proved, according to and in compliance with the laws and usages of the territory, state, or country in which such deeds and conveyances were acknowledged and proved, or in which they shall be acknowledged or proven, are hereby declared effectual and valid in law, to all intents and purposes, as though the same acknowledgments had been taken, or proof of execution made, within this territory, and

the acknowledgment was taken before a judge of the Court of Common Pleas, while in the case before us it was before a commissioner.   The provision of the New York Revised Statutes (*Edition of* 1836, *vol.* 1, *p.* 749, *section eighteen*), to which we are referred, and which requires a clerk's certificate to a commissioner's acknowledgment when the deed is to be recorded in another county, manifestly has no application to this case, as it only applies when the deed is to be recorded in some other county of *that state.*   This clerk's certificate is no part of the acknowledgment, or of the certificate of acknowledgment.   The latter is the only certificate required under · section seven of the territorial act.   The question

in pursuance to the acts and laws thereof; and such deeds, so acknowledged or proved as aforesaid, may be admitted to be recorded in the respective counties in which such lands, tenements, and hereditaments do or may lie, any thing in the acts and laws of the territory to the contrary thereof notwithstanding: *Provided,* That such deeds and conveyances, so executed, acknowledged or proven, or to be acknowledged and proven, be recorded within two years from the passing of this act. *And provided also,* That all deeds and conveyances of lands, tenements, and hereditaments situated within this territory, which have been acknowledged or proved in any other territory, state, or country, according to, and in compliance with, the laws and usages of such territory, state, or country, and which deeds and conveyances have been recorded within this territory, be, and the same are hereby confirmed, and declared effective and valid in law, to all intents and purposes, as though the said deeds or conveyances, so acknowledged or proven, and recorded, had, prior to being recorded, been acknowledged or proved within this territory.

"Sec. 2.   And be it further enacted, that all deeds and conveyances of lands, tenements, and hereditaments, situate, lying, and being within this territory, which shall hereafter be made, executed, and acknowledged or proved in any other territory, state or country whatever, shall not be admitted to be recorded within this territory,

unless such deed or conveyance shall be accompanied with a certificate annexed of some clerk or prothonotary of a court of record, or a notary public of the county, state, or country in which such acknowledgment was taken or proof made, under the seal of the court or office (as the case may be), stating that the acknowledgment was taken or proof made before a competent authority, according to the laws and usages of such state or country, which certificate so made and annexed shall be recorded, together with the deed or conveyance, and shall have like effect in law as though the same had been acknowledged or proven within this territory, and no other.

"Sec. 3.   And be it further enacted, that all deeds and conveyances of lands, tenements, and hereditaments, situate, lying and being within this territory, which shall hereafter be made and executed in any other territory, state, or country, whereby such lands, tenements, and hereditaments shall be conveyed, in whole or in part, or otherwise affected or incumbered in law, shall be acknowledged, or proved, and certified as aforesaid, and recorded in the county in which such lands, tenements, or hereditaments so conveyed or affected shall be situate, within one year after the day on which such deed was executed.   And all deeds and conveyances which shall be made and executed within the said territory, for the conveyance of any lands, tenements, or hereditaments situated within the

GALPIN v. ABBOTT.

here is, whether the acknowledgment, and the *certificate of such acknowledgment*, were in accordance with the laws of New York. Upon this question we can not entertain a doubt. We think, therefore, the deeds were sufficiently ac-knowledged and certified to entitle them to record here, if they could be recorded with a single witness only.

But the question still remains, whether the deeds were entitled to record with but a single subscribing witness.

This question depends entirely upon the territorial statute originally adopted by the Governor and Judges, March 27th, 1820, from the laws of five of the original states (*Laws of* 1820, *p.* 156, *et seq.*), re-enacted without altera-

same, whereby such lands, tenements, and hereditaments shall be conveyed, affected, or incumbered, shall be acknowledged, or proven, and recorded within six months of the actual time of signing or executing such deeds; and if any deed or convey-ance of lands, tenements, and heredita-ments, made and executed, or to be made and executed, whereby the same shall be affected in law, or in any manner incum-bered, shall not be acknowledged or proved, and recorded, within the respective terms allowed by this act, the same shall be deemed fraudulent against any subsequent *bona fide* purchaser or purchasers without knowledge of the existence of such former deed or conveyance.

"Sec. 4. And be it further enacted, that deeds for lands, tenements, or heredita-ments lying within this territory, may be acknowledged before a justice of the com-mon pleas, or of the peace, of any county in the territory, and be recorded in that county in which such lands, tenements, and hereditaments are situated; and such acknowledgment shall have like effect as though made in the same county in which such lands, tenements, and hereditaments do or shall lie.

"Sec. 5. And be it further enacted, that so much of the acts and laws of the territory as come within the purview of this act, be, and the same are hereby re-pealed."

This act is said, in *Lessee of Allen v. Parish*, 3 *Ohio*, 107, to have been passed on the application of the Governor of Con-necticut, representing that many deeds and conveyances of land lying within the ter-ritory had been executed in that state, under an impression that its jurisdiction extended over the district commonly called the Connecticut Reserve. And it was held in that case, that where a deed was exe-cuted and acknowledged in New Hamp-shire, in 1801, according to the laws of that state, but not recorded within the time limited in the proviso to section one, its validity as against the grantor or his heirs was not affected by the failure so to re-cord it.

By the act of Congress of April 30th, 1802 (2 *Stat. at Large,* 173), all that por-tion of the then Northwest Territory not included within the boundaries of the state of Ohio, thereby authorized to be formed, was thereby "attached to and made a part of the Indiana Territory, from and after the formation of the said state."

The Constitution of Ohio was adopted November 29th, 1802. It would seem, therefore, that the act of the Governor and Judges of January 20th, 1802, above given was in force in the eastern portion of the present state of Michigan from that date, until November 29th of the same year, when the whole of Michigan came under the jurisdiction of Indiana.

No acts on the subject of conveyances are believed to have been adopted by the legislative authority of Indiana Territory between November 29th, 1802, and the or-ganization of Michigan Territory by the act of Congress of January 11th, 1805, which

tion (so far as this point is involved), April 12th, 1827 (*Laws of* 1827, *p.* 258; *and Laws of* 1833, *p.* 279), and in force at the time the deeds in question were made and recorded. We say the question depends entirely upon this statute, because it was the only statute in force upon the subject, and because, though statutes *in pari materia* often shed much light upon the true construction of a particular statute in a doubtful case, yet, in the present case, we think the legislative intent can be easily deduced from this statute itself, and if it could not, such is the peculiar nature of the case, that little light could be derived either from prior or subsequent legislation. Little from the for-

took effect July 1st of that year. This act contained a similar provision for the formation of a territorial government to that contained in the act organizing Indiana Territory; but neither in this, nor in the act of Congress of April 30th, 1802, above cited, was there any express provision continuing in force any laws.

As before stated, all the enactments of the legislative authorities of the Northwest and Indiana Territories were expressly repealed by the Governor and Judges of Michigan, September 16th, 1810. "An Act concerning the Recording of Deeds and other Writings," adopted by the Governor and Judges August 29th, 1805 (*Woodward Code*, § 87), provides "That the clerk of every court shall record all deeds and writings acknowledged or proved before such court, or any judge thereof, or any justice of the peace, or any notary public, together with the acknowledgments of married women, and all endorsements and papers thereto annexed, by entering them, word for word, in proper books, to be carefully preserved, and shall afterwards re-deliver them to the parties entitled to them.

"That when husband and wife have sealed and delivered a writing, if the wife appear before such court, judge, or justice, or notary public, and being examined privily and apart from her husband, shall declare that she did freely and willingly seal 'and deliver the said writing, to be then shown and explained to her, and

wishes not to retract it, and consenteth that it may be recorded, a certificate of such privy examination being returned and recorded with the writing, and the writing being acknowledged also by the husband, or proved by witnesses to be his act, in such case the said writing shall not only be sufficient to convey or release any right of dower, thereby intended to be released or conveyed, but be as effectual for every other purpose, as if she were an unmarried woman.

"That if the party reside not in Michigan, the acknowledgment by such party, or the proof by the number of witnesses requisite, of the sealing and delivery of the writing, before any court of law, or the mayor, or any chief magistrate of any city, town, or corporation, in which they party shall dwell, certified by such court, mayor, or magistrate, in the manner such acts are usually authenticated by them, together with any relinquishment of dower, shall be effectual."

"An Act concerning the Recording of Deeds and other Writings" of the date of February 21st, 1809, was, among other laws, declared void, as not properly adopted and signed, by the Supreme Court of the territory at its September term, 1809. These laws had been adopted in the absence of the Chief Justice, and were signed only by the Governor as presiding officer of the legislative body.

Section six of "An Act in addition to 'An Act to adjust the Estates and Affair.

GALPIN v. ABBOTT.

mer, as this was the first act of the legislative power of the territory in reference to the material questions here in- volved. And whether the provision of the Ordinance requir- ing two witnesses (until other provisions should be made by the territorial laws) was, or was not, in force when this act was adopted, it ceased *upon its adoption*, and its prior existence can furnish no safe inference in itself, whether the policy of that Ordinance in this 'respect was intended to be *continued* or *changed* by the act. The one inference might be as probable as the other, and the question can only be settled by the provisions of the act itself. Quite as little light is to be derived from subsequent legislation;

of Deceased Persons, testate and intestate, and for other purposes,'" adopted Novem- ber 4th, 1815, provides:

"That all deeds and conveyances which shall be made and executed within this territory, of or concerning any lands, tene- ments, or hereditaments therein, or where- by the same may be any way affected in law or equity, shall be recorded in the register's office of the district where such lands or hereditaments are lying and being, within six months after the execution of such deeds or conveyances; and every such deed and conveyance that shall, at any time after the publication hereof, be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid, before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee may claim."—*Cass Code, p.* 80.

Section one of "An Act concerning Deeds and Conveyances," adopted by the Governor and Judges March 27th, 1820 (*Code of* 1820, 156), was re-enacted as section one of the act of 1827.—*Code of* 1827, *p.* 258; *Revision of* 1833, *p.* 279.

Section two of the act of 1820, is as follows:

"And be it further enacted, that all such deeds, or other conveyances, of or concerning any lands, tenements, or here-

ditaments lying within this territory, or whereby the same may be in anywise af- fected, in law or equity, shall be acknowl- edged by the party or parties executing the same, or proved by one or more of the subscribing witnesses thereto, before one of the judges of the Supreme Court, or before one of the justices of any county court, a notary public, or any justice of the peace, in any county within this ter- ritory; and a certificate of such acknowl- edgment or proof being endorsed thereon, and signed by the person before whom the same was taken, such deed or conveyance shall be recorded in the office of register of probate for the county, or register for the city, where such lands, tenements, or hereditaments, respectively, are situated, lying and being, within six months after the execution of such deed or conveyance; and every such deed or conveyance that shall, at any time after the publication hereof, be made and executed, and which shall not be acknowledged or proved, and recorded, as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable con- sideration, unless such deed or conveyance be recorded as aforesaid, before the record- ing of the deed or conveyance under which such subsequent purchaser or mortgagee may claim. And all deeds and convey- ances which have been heretofore executed, of or concerning any lands, tenements, or hereditaments within this territory, where- by the same may have been affected in

GALPIN v. ABBOTT.

because, *First*, There was no subsequent act on the subject till after these deeds were executed and recorded, and a legislative construction could have little effect upon prior transactions; and, *Second*, The subsequent legislation so entirely changed and re-changed the law relative to witnesses, and deeds executed out of the state, that the principal inference to be drawn from this subsequent legislation as to the understanding or intention of the Legislature in reference to this act, is, that they were not satisfied with the law as it was, and therefore chose to alter it by making a different provision.

The question must, therefore, be settled by an analysis of the provisions of the act itself; and its solution will be found to depend mainly upon the first and seventh sections.

The first section provides "That all deeds or other conveyances of any lands, tenements, or hereditaments, lying in this territory, signed and sealed by the parties granting the same, having good and lawful right and authority thereunto, and signed by two or more witnesses, and acknowledged by such grantor or grantors, or proved, and recorded, as hereinafter provided, shall be good and valid to pass

anywise in law or equity, and which have not been heretofore recorded according to law, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance shall be recorded in the office of the proper register of probate, or of the register of the city of Detroit, as the case may require, agreeably to the provisions of this act, on or before the first day of December, which will be in the year of our Lord one thousand eight hundred and twenty-one, or unless such deed or conveyance be recorded as aforesaid, before the acknowledging or proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee may claim."

Sections three, four, five, six, and eight were subsequently re-enacted as sections three, four, five, six, and seven of the act of 1827.

Section seven was as follows: "And be it further enacted, that it shall not be lawful for any register of any city or county in this territory, to record any deed, conveyance, or writing above mentioned, unless the same shall be acknowledged or proved as is directed by this act, and which acknowledgment or proof shall be recorded therewith."

March 16th, 1822, this section seven was repealed. — *Pamphlet Laws, pub. in* 1824, *p*. 18.

October 23d, 1822, "An Act respecting Seals" was adopted, which provided "That any instrument to which the person making the same shall affix any device by way of seal, shall be adjudged and holden to be of the same force and obligation as if it were actually sealed."—*Pamphlet Laws pub. in* 1824, *p*. 34.

With these two changes, the act of 1820 remained in force in 1827.

the same lands, tenements, or hereditaments, to the grantee or grantees, without any other act or ceremony in law whatever."

Whether a deed without two witnesses would be invalid to pass the title *inter partes*, under this section, is a question upon which we express no opinion, as it is not involved in the case. But whether it relates to the validity of the deed *inter partes*, or only to its validity for the purposes of registry, for which provision is made in the subsequent sections, can make little difference here: whether it relates to the one or the other, or to both, we are satisfied from the nature of the provision, and the whole scope of the act—the obvious design of which was to provide *a system* for the conveyance of lands and the registry of deeds, which should be complete in itself—that this section must be construed as exclusive in its operation, though there are no negative words; and this is abundantly shown by the following authorities, cited by the counsel of the defendants.— *Wiswall v. Ross*, 4 *Port. Ala.* 321; *Clark v. Graham*, 6 *Wheat.* 577; *Alston v. Thompson*, 1 *Cheves*, 271; *Gorham v. Daniels*, 23 *Vt.* 600.

But if this provision, touching the validity of the deed, relates only to its validity for the purpose of registry (and it certainly relates to *this*, whether it has any greater extent or not), no one can doubt that, in *this respect* at least, the provision is exclusive, and no deed included under this section could be recorded without two witnesses. There was no registry at common law; and so far as this provision relates to validity for the purpose of registry, it is an *enabling act*. The validity of the deed for the purpose of registry can extend no further than the affirmative provisions of the statute have extended it; the common law can not supply any omission or deficiency of the statute. The same reasoning will apply to, and the same conclusion result from, the provisions of section seven, touching the validity of deeds there mentioned. We can not, therefore,

resist the conclusion that to authorize the registry of a deed under this statute, it must be a valid deed under this statute, and that its validity must depend upon the *affirmative provisions* of the *statute itself;* unless, indeed, the statute has in some way recognized a common law deed as susceptible of record—a point which we shall consider in the proper place.

But do the provisions of this section, in reference to the execution and attestation of deeds, extend to the deeds mentioned in the seventh section? The language of the first section is general, and on its face purports to apply to all deeds affecting lands in the territory; and must therefore be applied to all the deeds mentioned in the act, unless clearly limited to a part only, by some subsequent provision. It is also apparent that while this section purports to prescribe rules for the execution and attestation of all deeds affecting lands in the territory, it has made no provision for the mode of acknowledgment, or proof (as a substitute for acknowledgment), or registry, of the deeds mentioned in it; but for provisions touching these subjects it *expressly refers* to the subsequent provisions of the act, by the clause "and acknowledged, or proved, and recorded, as *hereinafter provided.*"

This reference would seem to extend to all the subsequent provisions of the act on the subject of acknowledgment or proof and registry, and plainly to indicate that all the deeds and conveyances for the acknowledgment or proof and registry, of which provision is made in any subsequent section, were understood to be included among the deeds and conveyances mentioned in this section, unless this reference should be found to be limited by some subsequent provision.

The subsequent provisions relating to the acknowledgment or proof and registry are to be found in sections two, three, four, six, and seven.

Section two (which will be noticed more fully hereafter)

provides for the acknowledgment or proof of deeds *within* the territory *only*, requires them to be recorded, and prescribes the consequences of omitting to record them. It makes no provision for acknowledgment or proof out of the territory, nor does it prescribe the order or manner of recording.

Section three provides for a register of deeds in the city of Detroit.

Section four provides for the acknowledgment of deeds of married women: 1st, those *residing in* the territory; 2d, those *residing without* the territory; and authorizes the recording of deeds of the latter class.

Section six, provides that "*all* deeds," &c., entitled to be recorded "by virtue of *this act*," shall be recorded in the order and within the time therein prescribed; and makes the deed when recorded, with the register's certificate on the same, as well as the record, or a transcript thereof, evidence in any court, without further proof. This is the only section which provides for the order or mode of recording.

Section seven, upon which the questions in this cause mainly depend, is in the following words: "That all deeds and conveyances of lands, tenements, or hereditaments, situate lying and being within this territory, which shall hereafter be made and executed in any other territory, state, or country, whereby such lands, tenements, or hereditaments shall be conveyed, in whole or in part, or otherwise affected or incumbered in law, shall be acknowledged, and proved, and certified, according to, and in conformity with, the laws and usages of the territory, state, or country, in which such deeds or conveyances were acknowledged or proved, or in which they shall be acknowledged or proved; and all such deeds and conveyances are hereby declared effectual and valid in law, to all intents and purposes, as though the same acknowledgments had been taken, or proof of execution made, within this territory, and in pursuance of the laws thereof; and such deeds and conveyances, so acknowledged

or proved as aforesaid, may be admitted to be, and shall'
be, recorded in the respective counties in which such lands,
tenements, or hereditaments, do or may lie; and all deeds
and conveyances of lands, tenements, and hereditaments,
situate ˮlying and being within this territory, which have been
acknowledged or proved in any other territory, state, or
country, according to, and in compliance with, the laws and
usages of such territory, state, or country, and which deeds
or conveyances have been recorded within this territory, be
and the same are hereby, confirmed and declared effectual
and valid in law, to all intents and purposes, as though the
said deeds or conveyances, so acknowledged or proved and
recorded, had, prior to being recorded, been acknowledged
or proved within this territory."

It is contended by the complainant's counsel that the
general provisions of section one are restrained by the lan-
guage of section two, so as to include no other deeds than
those which are required to be acknowledged under the
provisions of section two, and that the reference contained
in the language of section one in the clause " as hereinafter
provided," &c., is thereby restrained in like manner; that
section seven provides for a class of deeds not included in
section one, and is to be treated as complete in itself, pro-
viding for the execution, acknowledgment, and registry of
all deeds executed out of the territory; and in support of
this view (and necessary to its support) it is further con-
tended, that the execution of the deeds mentioned in section
seven is sufficiently provided for by the section itself, either,
1st (as maintained by the counsel who opened the argu-
ment), by adopting a common law deed and a common law
execution; or, 2d (as urged with much ability by the counsel
who closed), that this section has adopted, for the purposes
of execution, the law of the place of execution.

Let us see whether this construction will fairly harmonize
the various provisions of the statute.

Is the first section limited by the second as contended?

GALPIN v. ABBOTT.

It can not be denied that, on a first inspection, confining ourselves strictly to the particular words, "all such deeds," &c., in connection with the provision for acknowledgment within the territory, this view would appear plausible; but when we come to look at the leading idea and main object of the section, in connection with the various provisions which precede and follow it, we do not think this view can be maintained. The leading idea and chief purpose of this section were not to limit the preceding section, but to provide for the acknowledgment of deeds *within* the territory, and before officers within the territory; to require such deeds to be recorded, and to prescribe the consequences of a neglect to record. The apparent repugnancy between this section and the preceding, considered with reference to its main scope and professed object, is merely incidental; while to construe it only with reference to the particular words referred to, would create a direct conflict between this section and sections one, six, and seven. The same harmony of transition from one section or one provision to another is, perhaps, hardly to be expected in an act adopted, as this was, from the laws of five separate states, as would be expected in an act prepared and passed, as a whole, by the same legislature. But statutes should always be so construed as to produce the least conflict, and to harmonize, as far as possible, all their provisions.

The construction contended for by the complainant would confine the express general reference in section one (of which we have spoken) exclusively to the deeds mentioned in section two; while it is manifest, we think, that this reference extends also to those mentioned in section six, which latter section obviously includes those mentioned in section seven, as well as those in section two, — and it is admitted that those mentioned in section two are included in section one. Indeed, we think the reference is quite as clear to section six as to section two; as the sixth section is the only one which provides fully the

6 MICH. — D.

order and manner of recording, and prescribes the effect
of the record. If, then, it extends to the deeds mention-
ed in the sixth section, how can it be claimed not to ex-
tend to those mentioned in the seventh, which are included
in the sixth?

The same reference of section one just as evidently extends
to the second class of deeds mentioned in section four, which,
if executed out of the territory, might, as we think, and as
complainant's counsel contend, be acknowledged or proved
out of the territory, under the provisions of section seven. And
it can not well be doubted that the same class of deeds might
also be acknowledged *in* the territory under section *two*.

Section seven refers only to deeds executed out of the terri-
tory; and is entirely silent as to the manner of executing or
attesting such deeds, but makes full and express provision for
the mode of acknowledgment, or proof, and· the certificate
thereof, when taken in any other state or country—not by
adopting the law of the *place* of *execution*, but of the *place*
*where* such *acknowledgment* or *proof* may be *taken*.

We can not suppose that by the terms "deed or conveyance
made and executed" (see section seven) the Legislature intend-
ed to adopt a common law deed merely, or the mode of execu-
tion at common law. We can see no foundation for such an in_
ference in the language; and there is nothing in the context or
general scope of the statute to warrant the inference that they
intended to use the terms "deed or conveyance," in this sec-
tion in any different sense from that in which the same terms
are used in every other portion of the act. Nor can we sup-
pose, especially in the absence of any language indicative of
such an intent, that they intended to authorize the recording
of deeds, not only without a witness, but without even the sig-
nature of the grantor, neither of which was essential at com-
mon law—sealing alone being sufficient.

It may, we think, be safely affirmed that this feature of the
common law was never recognized in the territory of Michigan,
if in any of the northwestern states; and the construction

which would allow such a deed to be recorded, would certainly violate the rule of construction contended for by the complainant's counsel, that the plain and obvious meaning should be taken, instead of one only discoverable by professional criticism, for which he cited 23 *Pa. St.* 242.

Again, as already intimated, a married woman residing out of the territory, might, by virtue of section four, either execute and acknowledge her deed out of the territory under section seven, or within it under section two; and the construction contended for by complainant would then make the *same word*, in the *same connection* and in the *same place*, mean a common law deed under section seven, or a statute deed under section one, as it might happen to be acknowledged within or without the territory.

But the construction claimed by one of the complainant's counsel, that this section has adopted, in reference to the *execution* of the deed, the law of the *place of execution*, is, if possible, still less tenable. The language of the section precludes any such construction. It has not adopted the law of the place of execution for *any* purpose; while it has adopted, in the most explicit terms, in reference to the acknowledgment or proof, the law of the place *where acknowledged* or *proved*. It is but reasonable to suppose that if it intended to adopt the law of the place of execution, that intention would also have been expressed. The expression of the one is the exclusion of the other.

Now, the execution of the deed, and the attestation by subscribing witnesses—whether it be a part of the execution (as we think it is, under this statute) or not, are distinct from the acknowledgment, and complete without it. And we see no good reason why a deed executed in the state of New York might not, under section seven, be acknowledged or proved in the state of Pennsylvania or Ohio. In such case, the law of the place of execution and the place of acknowledgment would be different, and the latter only would apply.

. But again: Section seven after providing for the acknowl-

edgment out of the territory, declares that "all such deeds and
conveyances" shall be "as effectual and valid in law, to all in-
tents and purposes, as though the same acknowledgments had
been taken, or proof of execution made, within this territory,
and in pursuance of the laws thereof." This necessarily implies
that the deed, though executed out of the territory, might have
been acknowledged here, and, if so, it must have been under the
provisions of section two, as this was the only law under which
any acknowledgment could be taken here; and, in this case,
beyond all controversy, the two witnesses would have been re-
quired; as it is admitted, on all hands, that all the deeds, for
the acknowledgment of which provision is made in section
two, are included in, and referred to by section one.

The conclusions, then, to be drawn from an analysis of the
statute, are that the reference in section one extends to the deeds
mentioned in section seven; that, consequently, the deeds men-
tioned in section seven are included among those for the exe-
cution and attestation of which provision is made in the first
section; and that the seventh section, being silent on the sub-
ject of execution and attestation, and only providing for ac-
knowledgment or proof, a deed with but a single witness would
be of no greater validity for the purposes of registry, when
acknowledged out of the territory under section seven, than if
the same deed, so attested, had been acknowledged within the
territory under section two.

Let us now see if this final conclusion is not expressed in
plain and unmistakable terms in the language of section seven
itself. After having made provision for the acknowledgment
or proof of deeds out of the territory, it adopts the following
language already quoted—"and all such deeds and conveyan-
ces are hereby declared effectual and valid in law, to all intents
and purposes, *as though the same acknowledgments had been
taken, or proof of execution made, within this territory, and
in pursuance of the laws thereof.*"

We are compelled to regard this as a plain and direct
statute enactment of the conclusion at which we have already
arrived by analysis of the whole act.

It declares just how far such deeds shall be valid; not to all intents and purposes, but to the *same extent* as if the same deed had been acknowledged " in this territory, and in pursuance of the laws thereof." No reference could be more direct to the provisions of section two of this act, 'which was the only law under which the acknowledgment could be taken in the territory.

The test question then is, Had these deeds from Macy to Dodd and Hoxie, with but a single subscribing witness, been acknowledged in the territory under section two of this act, would they have been valid deeds, for the purpose of registry? Clearly they would not, since it is not, and can not be, denied that all the deeds for the acknowledgment or proof of which provision is made in the second section, are included in the first section, and must be executed according to the provisions of the latter to entitle them to record.

We think, therefore, that whatever doubt might be entertained whether the reference in section one extends to section seven, there can be little doubt that the language of section seven, above quoted, refers directly to section two, and, through that, to section one, for all that is essential to entitle a deed to record, except the acknowledgment or proof, and certificate, provided for in the seventh section. A similar limitation as to validity, and a similar reference to the first two sections of the act, are contained in the latter part of the seventh section, in reference to deeds previously acknowledged out of the territory.

The language referred to is too plain and explicit, and the whole provision too cautiously worded, especially when twice used in the same section, to have been the result of accident or mistake. At all events, if a mistake, it is one which this court can not correct.

We are, therefore, of opinion that the deeds from Macy to Dodd and Hoxie were not entitled to be recorded; that, though recorded in fact, the record was notice to no one; and, therefore, that Macy and his grantees were barred of the right of redemption by the foreclosure suit against Macy alone.

For these reasons the decree of the court below, dismissing the bill, must be affirmed.

MARTIN Ch. J. and MANNING J. concurred.   CAMPBELL J. did not sit in this case, having been counsel for one of the parties.