### HARRINGTON ET AL. *v.* SCOTT.

Where A obtained possession of the premises occupied by B, by knocking the door open with a hammer in B's absence, and in A's absence B soon afterwards re-entered by similar violence. *Held,* that A's temporary occupation so acquired was not such *quiet and peaceable* possession as would enable him to maintain forcible entry and detainer under R. S.

To sustain a complaint for unlawful and forcible entry and detainer, under R. S., there should be proof of such acts of violence as amount to a breach of the peace. Proof that the defendants (there being only two of them) repaired alone to the premises, and that one of them pounded upon the door and it was opened, whereupon they both entered, is not sufficient.

CERTIORARI to two justices of the peace of the county of St. Clair, to remove proceedings had before them, for a forcible entry and detainer. The facts appear in the opinion of the court.

*Van Dyke & Emmons,* for plaintiffs, in error.

*Backus,* for defendant, in error.

*By the court,* WHIPPLE, J.

The transcript shows that the plaintiff below instituted proceedings against Harrington and Young, under the forcible entry and detainer act. The complaint filed with the justice does not appear in the return, it having, as the parties state, been lost. Enough appears, however, to show that the proceedings were under the provisions of the 1st, 2nd and 3rd secs. of chap. 5, tit. 3, part 3 Rev. Stat. The form prescribed by statute for the warrant to be issued, contemplates that the substance of the complaint should be inserted therein. The warrant, among other things, recites that Scott was in the quiet and peaceable possession of lots number three and twelve, in the village of Port Huron; and that being so quietly and peaceably possessed, the said Harrington and Young, with force and arms, and with strong hand and multitude of people, made forcible entry into and upon the lands, &c., and still do with strong hand detain the same.

Without noticing the various points made by counsel upon the argument, it will be sufficient to consider the case upon its merits. The

evidence shows that on the 24th of October, 1845, Scott, accompanied by one Follensby, repaired to the premises, and that the former demanded of Young the keys of the two buildings situated thereon; that Young gave to Scott the key of the bake-house, and upon being asked where the key to the other building was, replied that he did not know, but supposed that Harrington had it. Young, upon being requested by Scott to remove some effects out of the building, replied that he would not, as he had nothing to do with it; Scott at the same time saying that he wanted possession of the building: that Scott having gone to the shop of one Saunders, soon returned with some tools, and with a hammer knocked the door of the building open. He then directed Saunders to take off the lock on the door and replace it by another, which being done, the door was locked, and the key handed to Follensby by Scott, with directions to take care of the premises. Follensby further testified, that on the 27th October following, Harrington and Young went to the premises, and that he saw Harrington "pound" on the door of the building, which was opened, and both then entered. There was no evidence whatever to show that Scott had any interest in the premises, or that he was ever in the possession of the buildings referred to by the witnesses. The question now arises, whether the jury, under such evidence, were authorized to render a verdict of guilty against the defendants. We think they were not. The evidence, if it shows anything, proves conclusively that Scott was a mere intruder; that he obtained possession of the buildings by violence; and that his *actual* possession, thus obtained, continued but a few minutes. Scott then seeks to dispossess the defendants and obtain restitution of the buildings, by a proceeding under the provisions of the statute above referred to. In the first place, the allegation in the complaint, that he was in the quiet and peaceable possession of the premises, is proved, if at all, by the testimony of his own witness, who swears that this *peaceable and quiet* possession was obtained by knocking the door open with a hammer, while Harrington, it is fair to infer from the evidence, was in possession. Now it is very clear, that a possession acquired in this *peaceable* and *quiet* way, does not constitute such a possession as would enable a party to maintain trespass under the facts disclosed in the return. A party cannot make a possession, thus acquired, the ground-work of an action. If he could, then should

we hold our homes by a precarious tenure. Beside, what evidence is there to maintain the allegations contained in the complaint, that the defendants, with force and arms, and with strong hand and multitude of people, made forcible entry, &c., and with strong hand detain, &c. ? The summary proceeding provided by our statute is a substitute for a proceeding by indictment in England : it is in its nature a criminal proceeding, and the same proof is required to convict a party under such a proceeding, as would be required to convict him if indicted. The language of the complaint is not satisfied by proof that one of the defendants pounded on the door of the building: there should have been proof of such facts as would amount to a breach of the peace: there is an entire absence of proof going to show, either that the entry was made by the defendants with strong hand and multitude of people, or that the premises were with strong hand detained by them. The testimony fully establishes the fact, that the defendants repaired *alone* to the premises, and that but one of them, without doing any act calculated to excite a breach of the peace, re-entered into possession. But it is useless to pursue the subject any further: the plaintiff below has sought to predicate a right to obtain restitution of premises, the possession of which he first acquired by violence and wrong ; and for this reason, if no other existed, the judgment must be reversed.

*Judgment reversed.*