AARON VAN AUKEN ET AL. v. CHARLES J. MONROE ET AL.

*Recording laws—Proof of inheritance—Ejectment by holder of tax-title against one who entered by stealth.*

The registry of a New York deed made in 1838 and attested by only one witness is inadmissible as evidence in Michigan, being subject to the recording laws of 1827.

Facts not shown must be taken as not existing.

The registry of a quit-claim deed purporting to be from the heirs of a former owner is inadmissible to show title on proof only that they were his children, without showing that they were born in wedlock or that their mother became his wife.

The holder of a tax-title whose occupancy consists in making improvements and not in actual residence, can bring ejectment against one who has forcibly entered without right and by stealth.

Error to Van Buren. Submitted April 16–17. Decided June 4.

EJECTMENT. Defendants bring error.

*Richards & Mills* and *Brown, Howard & Roos* for plaintiffs in error.

*Edward Bacon* for defendants in error.  The owner of a tax-title who has had prior and paramount possession, can maintain ejectment against trespassers or intruders, *McFarlane v. Ray*, 14 Mich., 471; *Millerd v. Reeves*, 1 Mich., 114; *Lull v. Davis*, id., 81; *Maltonner v. Dimmick*, 4 Barb., 566; *Clute v. Voris*, 31 Barb., 511; *Hopkins v. Mason*, 61 Barb., 469; Tyler on Ejectment, 86, 166, 564; one cannot obtain peaceable possession by entering land stealthily and by force, *Harrington v. Scott*, 1 Mich., 18; *Bates v. Campbell*, 25 Wis., 613; *Murray v. Hazen*, 2 Johns., 22; *Murray v. Denn*, 5 Cow., 200; *Day v. Alverson*, 9 Wend., 223; *Holmes v. Seely*, 17 Wend., 75; *Linthicum v. Ray*, 9 Wall., 243.  Act 21 of 1861, confirming deeds, does not make the record of a defective conveyance evidence of the original, *Brown v. McCormick*, 28 Mich., 220.

GRAVES, J.  This is an ejectment for a piece of land in the county of Van Buren.  The action was originally brought by Jay R. Monroe (senior) against the plaintiffs in error and one James R. Southard.  The death of Jay R. Monroe (senior) was suggested and the cause was allowed to be prosecuted in the names of defendants in error as his heirs-at-law, and thereafter the death of defendant Southard was shown and the action proceeded against the remaining defendants.  The only intimation in the case of the time when the suit was commenced appears in the judge's charge and it is mentioned there as being December 30th, 1875.  The jury returned a verdict for the plaintiffs, and the defendants sued out a writ of error and now claim a review of rulings at the trial on bill of exceptions.

The view the nature of the case prompts relieves several matters noticed by counsel of all present importance and they will not be referred to.

Although somewhat out of the order of proceeding, a question which came up during the course of the defense may properly be disposed of here. Both brevity and clearness will be favored.

The court did not err in refusing defendant's offer of the register's entry of what purported to be a deed made in New York by Allen, the patentee, to Elliott in January, 1838; nor in refusing their offer of the record of what purported to be a quit claim deed made in December, 1875, by Elliott's heirs to Van Auken. Both were offered to prove title in defendants, and that alone, and they were the only offers of proof of title by the defense except the patent which was proved to have been issued to Allen in September, 1838. According to the record offered, the supposed deed to Elliott in January, 1838, and given in New York, was attested by only one witness, and being subject to our act of 1827, the proof was clearly inadmissible under our previous decisions. *Galpin v. Abbott,* 6 Mich., 17; *Crane v. Reeder,* 21 Mich., 24; *Brown v. Cady,* 11 Mich., 535; *Brown v. McCormick,* 28 Mich., 215.

The other record was not supported by any proof or any legitimate offer of proof connecting Elliott, the supposed purchaser from the patentee, with the title, nor supported by proof, or any offer to prove, facts needful to make out that the grantors, as the instrument assumed, were his heirs. True it was stated in a deposition that they were his children. But no proof was made or tendered that they were the issue of any marriage or that their mother ever became his wife. These matters having been properly ruled out, the case as to them stood subject to the maxim that a state of things not made to appear must be taken as not existing. 2 Poth. (Evan's ed.), § 14, p. 280; Broom's Max., 164; Wharton's Max., No. 39. Putting them aside, the case comes to be considered in a shape which will permit it to be disposed of without much difficulty and on a single ground. December, 1843, the Auditor General deeded to Monroe for

the tax of 1839, and also in November, 1844, for the tax of 1840.   March, 1847, he again deeded to Monroe pursuant to a sale made in October, 1844, for the taxes of 1842.   After suit was commenced three more deeds were issued to him by the Auditor General for taxes of other years, and it appeared that he paid the taxes from 1843 to 1875 inclusive, except for years covered by the tax-deeds.

Prior to the summer of 1846 no one seems to have occupied, but at that time Monroe exercised acts of ownership and proceeded to occupy, and this he continued in one form or another without any long intervals, and so far as appears, without interference and without controversy concerning the right, up to December, 1875, when defendants entered.   Previous to this last date the place had been without any sort of dwelling, and Monroe's occupancy in person and through others had not been by living there, but in clearing off timber, tilling, and in various other ways.

The deed of 1847 by the Auditor General *prima facie* conferred legal title, and one which overrode or extinguished the original title derived from the United States, and whatever equities if any existed against him as actual possessor of the legal title and actual occupant. The deed of 1847 and his open peaceable possession for years and at the time of defendants' entry constituted badges of exclusive legal right sufficient to keep out trespassers and intruders, and the entry of defendants appears to have been by stealth and without right. They moved a small house to a point convenient for the purpose, and during the night hurried it upon the land and immediately occupied it.   The act as against Monroe was wholly aggressive.

The modern doctrine of the law will not encourage parties to decline resort to judicial remedies and to assume to do themselves justice or grasp advantage through stealth or violence, and it is positive in generally refusing to accord to such means the benefit which would naturally accrue

from fair and peaceful measures, and the principle of this politic doctrine applies to the course pursued by plaintiffs in error.

Monroe's possession of the land, along with the fact of his being grantee in the tax deed of 1847, gave him a positive and material advantage of which it was not competent for the plaintiffs in error to deprive him by their nocturnal invasion.

Their entry was forcible and irregular and did not amount to a possession which entitled them to draw into question the legal sufficiency of Monroe's right to the land or to set up an outstanding title in another.

The authorities which bear upon the question are very numerous. A number will be referred to.

In *Harrington v. Scott,* a case of forcible entry and detainer, the court in remarking upon the plaintiff's possession, which had been gained by force and retained but a short time, observed that a party could not make a possession thus acquired "the ground work of an action." 1 Mich., 17.

*Doe v. Dyball* was ejectment for part of a house. The case was tried in 1829. The lessor of plaintiff proved a conveyance back in 1818 and then proved that he had public possession from 1826 till November, 1827, when the defendant and several others came about three o'clock in the night and took forcible possession. Defendant's counsel objected that this showing of possession for the short period from 1826 to November, 1827, was no evidence of possession under the deed dated back in 1818, and Lord Tenterden, before whom the case was being tried, immediately disposed of the objection and also of the case in these terms: "Suppose there had been no deed at all put in. We find that, in 1826, a tenant of the lessor of the plaintiff had the key delivered to him, when he went in, and that he had peaceable possession of this room, till the defendant came in November, 1827. That is sufficient proof of title as against a man who comes and takes forcible possession at three o'clock

in the morning. The plaintiff is entitled to a verdict."
3 C. & P., 610: s. c., Mood. & M., 346.

In *Asher v. Whitlock*, L. R., 1 Q. B., 1, which was
ejectment founded on the plaintiff's prior possession and
an adverse holding by defendant, Chief Justice Cockburn,
after referring to *Doe v. Dyball*, as sound law, and say-
ing there were other authorities to the same effect,
observed as follows : "Suppose the person who originally
enclosed the land had been expelled by the defendant,
or the defendant had obtained possession without force,
by simply walking in at the open door in the absence of
the then possessor, and were to say to him—'You have no
more title than I have; my possession is as good as
yours'—surely ejectment could have been maintained by
the original possessor against the defendant."

In *Christy v. Scott*, 14 How., 282, Mr. Justice Curtis,
speaking for the whole court, said : "The plaintiff says
he was seised in fee, and the defendant ejected him
from the possession. The defendant, not denying this,
answers that if the plaintiff had any paper title, it was
under a certain grant which was not valid. He shows
no title whatever in himself. But a mere intruder can-
not enter on a person actually seised, and eject him,
and then question his title, or set up an outstanding title
in another. The maxim that the plaintiff must recover
on the strength of his own title, and not on the weak-
ness of the defendant's, is applicable to all actions for
the recovery of property. But if the plaintiff had actual
prior possession of the land, this is strong enough to
enable him to recover it from a mere trespasser, who
entered without any title. He may do so by a writ of
entry, where that remedy is still practised, or by an
ejectment, or he may maintain trespass."

The same doctrine was declared in substance by
Chief Justice Kent in *Jackson v. Harder*, 4 Johns., 202,
and it has been repeated often in different terms.
See also *McFarlane v. Ray*, 14 Mich., 465; *Davison v.
Gent*, 38 E. L. & E., 469; *Ward v. McIntosh*, 12 Ohio

St., 231; *Lessee of Fowler v. Whiteman*, 2 Ohio St., 270, 285; *Lessee of Holt's Heirs v. Hemphill's Heirs*, 3 Ohio (Hammond) 232, 236; *Lessee of Ludlow's Heirs v. McBride*, id., 240; *Robinoe v. Doe*, 6 Blackf., 85; *People v. Leonard*, 11 Johns., 504, 509; *Whitney v. Wright*, 15 Wend., 172; *Hill v. Draper*, 10 Barb., 454; *Ford v. Belmont*, 69 N. Y., 567; *Wendell v. Blanchard*, 2 N. H., 456; *Hubbard v. Little*, 9 Cush., 475; *Nichols v. Todd*, 2 Gray, 568; *Hawkins v. County Com'rs*, 2 Allen, 254; *Hutchins v. Erickson*, 1 Harr. & McHen., 339; *Maltonner v. Dimmick*, 4 Barb., 566; 1 Cow. and H. notes, 353; 1 Spence Eq. Jur., 225; Buller's N. P., 103, 2 Greenleaf Ev., § 311; 2 Phil. Ev., 282; 1 Poth. Ob., 467, marg.

If Monroe's right under the tax deed, of 1847, and his holding of possession were subject to any qualifications of an equitable nature in consequence of some relation or duty to Allen or Elliott the plaintiffs in error were not in a position which permitted them to urge it. Moreover it cannot be certainly admitted that any such equitable consideration could be made available for any body in ejectment. *Ryder v. Flanders*, 30 Mich., 336; *Crane v. Reeder*, 25 Mich., 303. However, the point requires no decision now.

If the view presented is correct, the defendants in error were entitled to a verdict on any admissible construction of the case described in the record and the result ought not to be affected by any of the objections insisted on.

The judgment should be affirmed with costs and the cause remanded for any further legitimate proceedings which may be desired.

The other Justices concurred.