HENRY JOSEPH RICHTER v. FREDERICK W. CORDES ET AL.

*Schools and school-districts—Possession of building—Parochial school—Forcible entry and detainer.*

The inhabitants of a regularly organized school-district were Roman Catholics, and the school kept therein had been for some years supported in part by contributions from the church authorities, and in part by public money. The teacher had been regularly contracted with by the school-district officers, except for the last two years of his service, during which time he continued to teach without any formal contract, and to occupy the lower portion of the school-house as a residence. The district officers became dissatisfied with the teacher, and advertised for another. The parish priest objected to the discharge of the teacher, and claimed that the building belonged to the church, and that the school was a parochial, and not a public district, school. The

teacher attorned to the bishop of the diocese in which the school-district was situated, and who held the record title to the land on which the building stood, and as the final outcome of the matter the district officers obtained peaceable possession of the building, which they maintained by the use of force against a forcible attempt on the part of the priest to eject them, whereupon the bishop instituted summary proceedings to recover possession of the building, charging the officers with both forcible entry and detainer. And it is held:

a—That the possession of the teacher was the possession of the district, and that he could not legally turn it over to the priest or to the bishop.

b—That, as the defendants obtained possession without using force or threats against any person, and without committing a breach of the peace, their retention of possession by using force against force in the attempt to eject them did not change the character of their entry, or make that forcible which was before peaceable, and that there was therefore, under the decisions of the Court, no forcible entry.

c—That, as the school-district was, and long had been, in possession of the school-house, which possession had been recognized and acceded to by the church authorities, the district could be ousted therefrom only by a proper and legal process, after a proper and legal notice.

Error to Kent. (Grove, J.)· Argued April 5, 1894. Decided May 18, 1894.

Proceedings for forcible entry and detainer. Complainant brings error. Affirmed. The facts are stated in the opinion.

*Francis A. Stace* (*Uhl & Crane*, of counsel), for. appellant.

*Wolcott & Ward* (*George P. Wanty*, of counsel), for defendants.

GRANT, J. The plaintiff is bishop of the Catholic diocese of Grand Rapids, which includes the township of Alpine, and defendants are the officers of school-district No. 11 of said township, and also members of the Roman Catholic church. The complaint and warrant charge both.

forcible entry and detainer. The building in controversy is situated upon a piece of land described as containing two acres. The complaint states that the lower portion of said building is occupied as a dwelling-house by one Aloysius Batsche, and that the upper floor is used as a school-room, and that the defendants, on the 4th day of September, 1892, entered upon said upper floor of said building with force, while the same was lawfully in the possession of said Henry Joseph Richter, and that they unlawfully hold the same by force and against his rights. Plaintiff introduced a deed from Caspar H. Borgess to plaintiff, dated May 7, 1883, and under this he holds the record title to the land on which the school-house is situated.

Counsel for plaintiff state in their brief that the land was conveyed by one Eberhardt Cordes, in 1869, to one Peter Hennaert, then the administrator of the diocese of Detroit, during a vacancy in the bishopric; that the congregation, which was of the Roman Catholic faith, proceeded to erect on this land a church edifice and a school-house, the latter being the building in question; that the building was erected by the entire congregation through subscriptions, entertainments, and other means.

The counsel for the defendants state in their brief that in 1869 the district had one school-site and an old school-house; that they concluded to build a new school-house; that Eberhardt Cordes agreed to furnish the site to the district; that the district proceeded to raise funds, partly by subscription and partly by taxes, for the erection of a school-house; that the deed was not made until the school-house was nearly, if not quite, completed; that Mr. Cordes proposed to deed it to the district; that the bishop objected, and demanded that the title be placed in him, which was finally done.

There is nothing in the record to sustain the statements

of either counsel. The early history of this school and of the school-district is not contained in the record. The record goes no further back in its history than about seven years. It is, however, established that this is a regularly organized school-district, that it has received its share of the school fund, and has raised money by taxation to support the school. Batsche, prior to September, 1892, had been employed for some seven years as its teacher. He, with his family, occupied the lower part of the building, the upper part being devoted exclusively to school purposes. The tenets of the Roman Catholic faith were taught in the school without objection. The inhabitants of the district, being entirely of that faith, appear to have desired this to be done. District meetings were annually held, officers chosen, and teachers hired and paid by the school board. Several contracts, in the usual form, made with Mr. Batsche, were introduced in evidence, but for two years prior to the trouble he appears to have continued without any formal contract of hiring. Scholars were admitted from outside the district, who paid tuition, those within the district, whose parents were able, also paid, and the trustees of the church appear to have contributed towards the teacher's salary.

At the close of the school in 1892, Batsche, as usual, remained in possession of the dwelling part of the building, and had the keys of the school-room. The board became dissatisfied with Mr. Batsche as a teacher, determined not to hire him, and advertised for another teacher. The priest, Fr. Schmitt, who had recently been placed in charge of the church and parish, objected to the discharge of Mr. Batsche. Attempts were made to reconcile their differences, which proved unavailing. Fr. Schmitt appears to have claimed that the building belonged to the church; that the school was a parochial, and not a public district, school; and Mr. Batsche then attorned to the plaintiff. It

is evident that Fr. Schmitt intended to retain the possession and control of the school so as to establish Mr. Batsche there as teacher.

On August 31, which was Wednesday, the defendants went to the school-house, found the doors open, walked in without any opposition, and took possession of the school-room. No one was present at that time except Mrs. Batsche, who made no objection. Defendants then placed a padlock on the door, and went away. They returned the next morning, and found that the outside door had been locked during the night. They testify that they found a window leading into the hall open, held up by a stick of wood; that they entered, and, with a wire, unlocked the school-room door and the outside door, and took possession, which possession they held up to the time this suit was brought. One William Brechting came in a short time, and, claiming to be acting in behalf of plaintiff, attempted to force his way into the school-room by breaking down the door. In this he was prevented by defendant Edward Cordes. From that time until the following Sunday one of the defendants remained in possession of the school-room day and night. On Sunday Fr. Schmitt obtained the presence of two deputy-sheriffs, and, after the services in the church were over, marched with some of the church trustees, the children, and the congregation to the school-house. He entered without opposition. The door leading from the storm-house into the hall had been removed. The school-room door was unlocked. The children were seated, and he proceeded to take their names, with a view to organize a school. He then ordered the door belonging to the hall to be taken down stairs, and hung in its proper place. He took hold of the door for that purpose, and defendant Edward Cordes also took hold of it, telling him to leave it there. This caused some disturbance, and the officers interfered to keep order.

The door was then taken down stairs. Fr. Schmitt then caused the padlock to be taken off with a hatchet, and ordered every one to leave the room, so that it could be locked up. The defendants refused to go. He then withdrew, locked the door, leaving the defendants in possession, and shortly after instituted this suit.

As bearing upon the question whether Batsche held possession for the plaintiff or for the school-district, the records of the school-district were introduced in evidence, showing how the business had been conducted, the employment of teachers, and repairs upon and taking care of the building. These records, and this evidence show that the business was conducted in the usual manner of school-districts. We have stated sufficient of the facts to present the questions raised.

It is contended on behalf of the plaintiff that the evidence establishes beyond controversy that the title to the property was in him; that this was a parochial school, and always had been; that, even if it were not a parochial school, Batsche's relations to the district ceased at the end of the previous school year; that he was in the lawful possession; that he was ejected by force; and the court was requested to direct a verdict in plaintiff's favor. It is contended on behalf of the defendants that they were lawfully in possession of the school-house; that Batsche could not attorn to the plaintiff so as to deprive them of that possession; that they were a regularly organized school-district; that as such they obtained the public funds to support the school; that they hired teachers, and paid the expenses; that the plaintiff obtained no possession or right of possession by the fact that the church contributed to the support of the school, or that religious exercises were held in it; and they deny that they obtained possession by force. The court, under a full and fair charge, left it to the jury to determine whether there was such force used in obtain-

ing possession as to constitute a forcible entry, and whether the possession of Batsche was the possession of the plaintiff or of the defendants. Upon this latter question the charge to the jury is as follows:

"The question whether the defendants had a right to the possession depends upon the occupation of the premises on and prior to the day of the entry, and this will depend upon the relation the witness Aloysius Batsche held to the parties in this controversy. If he was there as a teacher of the district school, in the employment of the school board, his possession was that of the board, and the verdict in this case in that event, if you should so find, should be, 'Not guilty.' If he was there as the teacher of the parochial school, under the authority of the bishop, he was there as the agent of the plaintiff, and defendants would not have a right to put him out by force or keep him out by force. You should, then, first determine whether he was there as the teacher of a district school, by considering this question, under employment of the school board, or as the teacher of a parochial school under employment by authority of the church or of the bishop. If you find that he was there in the former capacity, namely, that of a teacher of a district school under employment of the school board, you need go no further in your inquiry, but render a verdict of 'Not guilty.' If, however, you find from the evidence that he was there in the latter capacity, namely, as a teacher of a parochial school under the authority of the bishop, then you will determine from the evidence whether the defendants expelled Mr. Batsche or kept him out by such force as would amount to a breach of the peace; and in that case, if such force was used, your verdict should be 'Guilty.' If you should find that force was not used, even though you should find that Batsche was there in the character of a parochial teacher, if you find such force was not used, then your verdict should be, 'Not guilty.'"

It is difficult to escape the conclusion that the district was in possession of the school-house. Any other conclusion would lead to holding that the bishop and the priest were guilty of receiving public funds in an illegal and unconstitutional manner. Counsel for plaintiff, in their brief, say:

" The evidence discloses an unprecedented condition of affairs in that locality. * * ' * These people, evidently for the purpose of obtaining their share of the public money, kept up the district organization, and for part of each year made contracts with the teacher in the usual form, the school being kept in the plaintiff's building without any agreement of any kind. Such a state of affairs could not give the district officers any right to the posses-. sion of the building, or to any part of it. It is undoubtedly the case that the actions of the school-district officers were against the letter and spirit of the Constitution and laws of the State in relation to appropriating public money for sectarian schools; but the district officers cannot, by their own violation of law, obtain any rights by reason of such violation. This is elementary."

We do not think this the legitimate conclusion to be drawn from the undisputed facts in the case. It is more just to the church authorities to hold that they recognized the validity of the school-district, and were willing to contribute to the support of the public school, especially inasmuch as they were permitted without objection to have their children taught in the school in the religious faith to which they were attached. It would be a reproach upon their honor and good citizenship to hold that for years they had been obtaining, under false and fraudulent representations, public moneys for sectarian purposes. Batsche's possession was the possession of the district, and he could not legally turn that possession over to the parish priest or the bishop. The title to the land or the building is not here involved. The defend-ants obtained possession without using force against any person. If they retained possession by using force against force in the attempt to eject them, this did not change the character of their entering, or make that forcible which was before peaceable. No breach of the peace was committed in entering, nor was possession obtained by threats or violence. There was, therefore, under the decisions of this Court, no forcible entry. *Har-*

*rington v. Scott,* 1 Mich. 17; *Davis v. Ingersoll,* 2 ˙Doug. 372; *Latimer v. Woodward,* Id. 368; *Seitz v. Miles,* 16 Mich. 456; *Shaw v. Hoffman,* 25 Id. 162; *Marsh v. Bristol,* 65 Id. 386. Under the decision in *Seitz v. Miles,* the sole question is one of forcible entry. A regularly organized and existing school-district was, and long had been, in possession of the school-house. This possession was, during all that time, recognized and acceded to by the church authorities. The district could be ousted therefrom only by a proper and legal process after a proper and legal notice.

The judgment is affirmed.

The other Justices concurred.