Adams, J.
This action was originally commenced in the year 1889; although the case was tried on the pleadings, the amended petition and the answer thereto which were filed in June and August, 1894, respectively.
It is an action by McCamey, as administrator, to recover for the wrongful death of Wilson, for the benefit of the next of kin; and the next of kin in this case are his wife and two minor children.
*545 The petition is lengthy, and, perhaps, as far as this opinion is concerned, the material facts in it can be much abbreviated. After alleging the incorporation of the defendant railroad company, and the operation of its railroad from this city to Sandusky, in Brie county, and through the village of Ankenytown where the accident occurred, the petition alleges that David Wilson, at ihe time of the accident, September 14th, 1888, was in the employ of the United States Express Company as expressman; and that at the same time he was also in the employ of the defendant railroad company as baggageman; that he was in the car in which his duties were performed,on a passenger train,No. 9, which was a north bound train from Newark. From Newark, to the point where the accident occurred, the general direction of the road is northerly, That Elroy Moore was the conductor on that passenger train, and was in charge of the train, and in control of Wilson, as baggageman. That a man by the name of Herron was the conductor on the south bound train, a freight train. That these trains had received orders to pass at Ankenytown; and that the freight train, in alleged violation of the rule of the company, instead of going into the switch or siding at the northerly end of the siding, had come down past the siding, and had backed in at the lower end of the siding. The petition sets out at great length very numerous items of negligence, which, it is claimed, resulted in the collision between the passenger and freight train, and which resulted in the death of Wilson.
The acts of negligence are:
“That the conductor of the defendant’s freight train, Ira Herron, was a careless and negligent person, and wholly unfit and incompetent to discharge the duties of a conductor.
“That defendant was negligent in employing and retaining said conductor.
“That said conductor negligently backed said freight train on to said siding at Ankenytown from the south end of the same.
*546 “That said conductor negligently failed to have the headlight of said freight train covered.
“That he neglected to adjust the switch for the main track.
“That he neglected to-lock and make the same safe.
“That he failed and neglected to give any signals, by lights or otherwise, to passenger train No. 9.
“That said headlight was negligently left uncovered; the. switch unadjusted or locked, or safe, and that no signals were given to the passenger train.
“That the switch-stand, lever and bar were negligently constructed, and without proper lights and signals and attachments for safe locking and adjusting the same.
“That said conductor of said freight train negligently left William Hanzey, a brakeman, to close the switch; that said Hanzey left the same in an unsafe condition, and not properly adjusted.
‘rThat said Hanzey was an incompetent and unsafe person for that purpose.
“That the defendant negligently employed and kept said Hanzey in its employ.
“That the conductor and engineer of the passenger train neglected to run said train past the siding at Ankenytown with care and caution, and negligently ran the same without any care or caution; without checking or stopping the same, and at a high, excessive, negligent unsafe and dangerous rate of speed, and negligently disregarding the fact that the locomotive headlight was uncovered, and the absence of safety signals at said switch, and carelessly and recklessly ran against said switch, the same not having been properly adjusted and locked for the main track, and collided said passenger train with said freight train, and killed said David Wilson outright.”
The amended petition was filed June 27th, 1894. The answer to the amended petition was filed on the 30th day of August, 1894.
The answer ' contains two defenses. The first defense, after making numerous formal admissions, denies all allegan *547 tions of negligence. It is on the issue made by the amended petition and the first defense to the answer that the case was tried, but there is a question made on the demurrer to the second defense of this answer to the amended petition. That second defense alleges at considerable length the organization of what is known as The Baltimore & Ohio Employes’ Relief Association, incorporated in Maryland. The answer alleges that the defendant railroad company contributed to the funds of that Association, and bore all of the expenses of its management. That on February 21st, 1887, Wilson became a member of that Relief Association, and became bound by the rules, constitution and by-laws of the Association. That he agreed, by his contract of membership, that certain dues to the Association were to be deducted from his wages. The further allegation is made that this contract of membership was a Maryland contract. That by reason of his membership, in case of injury, he himself, or in case of death, the beneficiary named by him should be entitled to three times the benefit due to a member of the lower or third class of beneficiaries. In the case of Wilson, three times that benefit would be the sum of fifteen hundred dollars.
The answer further alleges that on October 17th, 1888, Amanda A. Wilson, the widow of David Wilson, under this contract of membership, demanded of the relief association, ■and received from it, fifteen hundred dollars, as beneficiary, and released the railroad company, claiming to act both for herself and for her two minor children.
As I said before, a demurrer to this defense was sustained, •and that is assigned as error here.
Under the former pleadings in the case,, the defendant railroad company had brought Mrs. Wilson into the case aa a party defendant, and, by its additional answer, bad attempted to litigate, as between the railroad company and the plaintiff and Mrs. Wilson, practically the same matters that *548 are alleged in this answer to the amended petition. But on October 12th, 1892, as appears from the transcript, the action was dismissed as to Mrs. Wilson, and the additional answer of the defendant was withdrawn, and it is claimed, on behalf of counsel for defendant in error, that by that withdrawal — voluntary withdrawal by the defendant of this additional answer — the defendant waived any question that it had under this sceond defense. As I said before, that was in October, 1892.
On June 27th, 1894, the plaintiff filed the amended petition upon which this action was tried, and thereafter, on August 30th, this answer was filed. A demurrer to that defense was sustained by the court below. So that question is here for determination, and assigned as one of the grounds for error.
Now, this action is brought under section 6134, which provides:
“Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued), have entitled the party injured to maintain an action and recover damages in respect thereof; then, and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.”
Section 6135 further provides:
“Every such action shall be for the exclusive benefit of the wife, or husband, and children; or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the personal representative of the deceased person; and in every action the jury may give such damages, not exceeding in any case ten thousand dollars, as they may *549 think proportioned to the pecuniary injury resulting from such death, to the persons respectively for wjhose benefit such action shall be brought.”
Then follows the limitation as to the time within which the action shall be commenced, and then the section contains the further provision:
“The amount received by such personal representative, whether by settlement or otherwise, shall be apportioned among the beneficiaries,unless adjusted between themselves, by the court making the apportionment, in such manner, as shall be fair and equitable, having reference to the age and condition of such beneficiaries, and the laws of descent and distribution of personal estates left bv persons dying intestate.”
A case which, so far as I can discover, is directly in point on this question, was decided by the Supreme¡|Court of Nebraska, in 1894, the case of the C., B. & Q. R. Co. v. Wymore. There the widow had received a certain sum of money in release of her claim, and then afterwards, having been appointed administratrix, she brought an action, as administratrix, on behalf of herself and her children; and the Court held:
“The deceased’s contract did not,of itself, waive a right of action; (2), that neither that contract,nor the acceptance of the money or release of liability by the widow, operated to bar a right of action by the administratrix on behalf of the children; (3), that her voluntary acceptance of the benefit and release of the company, did not operate to bar any action for her own benefit.” 58 N. W., 1120.
On the other hand it is claimed that under these sections of the statute which I have quoted, the right of action belongs entirely to the personal representative. That the fund must be distributed under the direction and under the authority of the probate court. We think that it is settled in Ohio that in the absence of this statute, the next of kin —'neither the widow nor her children — could maintain an *550 action in her own name for the loss resulting by the death of the husband and father. So that, when she released, she released no right of action that she might have had against the railroad company, because she had none. The law did not give her any right of action; and whether or not, in the final distribution in the probate court — whether after having received a certain sum of money, she could receive any other sum of money, we think is a matter to be determined and litigated, if need be, between her ^nd the railroad company as to that fund or her share of it. So, that, upon consideration of the whole matter, we think that the demurrer to this second defense was properly sustained.
Then, at the trial of this action, we have all the evidence here in a bill of exceptions. TJie proof showed, as alleged in the petition, that Wilson was employed by the Superintendent of the division of the road as baggageman, and that, by an arrangement between the railroad company and the express company, one man acted in the dual capacity of baggageman and expressman. The proof showed that the express company required a bond of Wilson for the faithful discharge of his duties, and that probably one third of his wages was paid by the express company; but the evidence did not bring out, either way, clearly, whether that proportion of his wages was paid to him directly by the express company, or all of it paid to him by the railroad company, and afterwards refunded to the railroad company by the express company. The allegations of the petition that he was employed by both companies is sustained by the proof, although, as it seems to us from the proof, his main employment was by the railroad company as baggageman, and that the express employment was in addition to that. That employment is alleged in the petition, and the rule of the railroad company, as found on page 71 of the record, provides that:
*551 “Train baggage masters will receive instructions from the division superintendent or trainmaster. They will be under the control of the conductor while on the run. At terminal stations they must observe the instructions of the •station agents or station masters; they must also obey the orders of the genearl baggage agent. When employed as joint baggage master and express messenger, they will obey instructions form the Auditor of Revenue and Superintendents of Express, with regard to express matter.”
But, while I am on the subject of the evidence, I may say, in brief, without attempting any view of the testimony, that we think that this evidence warranted the verdict, if the law was correctly given to the jury by the trial court; ■and we would not, and do not, reverse the case because the verdict is not sustained by sufficient evidence.
After the close of the argument, and before the charge of the trial judge was given to the jury, defendant asked for a special verdict upon all the issues in the case, by having fourteen several questions answered. We find that these questions were proper questions to be submitted to the jury in this case. That is, they were pertinent to the issues made by the pleadings and by the evidence. The court refused on the sole ground that the request came too late.
In support of this contention, we are cited to a case in 31 Atlantic Rep, 964; and 14 S. E. Rep., 237; and a case in 39 N. E. Rep., 172.
I will read the syllabus in the case in 31 At. Rep., which was a Maryland case. The fourth paragraph of the syllabus •says:
“Act 1894, c 185, requiring the court to direct special findings of fact where they are requested by either party, does not require the court to submit special questions, when the request therefor is not made until after the close of the arguments, when the jury is about to retire.”
These other cases are also in point.
In Ohio, our statute on the subject is section 5201,vrhiofa *552 was the old code section 276; and as that section stood up until the amendment made in 91 Ohio Laws, 298, it was entirely discretionary with the court whether these special interrogatories should be given to the jury or not; but, by ihe act of May 18th, 1894, found in Vol. 91 Ohio Laws,. 298 — I read the latter part of the section, which says:
‘ In all cases, when requested by either party, the court shall instruct the jurors, if they render a general verdict,to. find especially upon particular questions of fact,to be stated in writing, and shall direct a written finding thereon, and the verdict and finding must be filed with the clerk, and entered on the journal.”
Now, we think that the fact that this original section stood for so many years in its permissive form, and was amended in 1894, so as to make it peremptory on the court, that the-court shall direct a written finding, and shall submit the particular questions of fact in writing, emphasizes the mandatory character of our legislation upon that subject.
It is true that in our act, as well as in the act referred to in the Marlyand case, the statute fixes no time, no stage of the trial, at which these special interrogatories shall be submitted; but we have other statutes. The statute providing for special instructions to the jury fixes the time that they shall be asked for and be given before the argument; the request for a written charge must come at a certain time; and we think that, in view of this amendment, the court cannot add to the statute by saying that at a certain time the requests come too -late, when the statute itself is silent upon that subject.
Another assignment of error is that the time card and book of rules were taken by the jury to their room when they retired, over the objection and exception by the defendant railroad company.
Now, an examination of Ohio cases: 11 Ohio St., 114; 2 Ohio St., 588; 45 Ohio St., 678; 32 Ohio St., 215, shows that *553 all these cases are along the line that what papers shall be taken to the jury room by the jury is a matter resting within the discretion of the trial judge. The case in 2 Ohio St.,588, is a case of depositions.. And there it is said that the proper practice is, as a general thing, for depositions to be taken to the jury room; but if the deposition also contains incompetent matter, or matter which has been ruled to, and the parts of the deposition cannot be separated, then it is proper for the trial judge to keep the deposition out of the jury room. The case in 45 Ohio St. was where, by accident, some memoranda of argument by counsel, which were on the back of a sketch put in evidence,got into the jury room, and that was held not ground for reversal. And the case in 32 Ohio St., was where the computation of a civil engineer in a case where he had made a computation was given to the jury, and it was held not to be error. And in a criminal case, where the statutes of a state were taken to the jury room, the court held that it as not ground for reversal. So, upon an examination of these cases, while we think that it would have been better that these rules and time card should not have been taken out by the jury, yet we are not willing to say that it was an abuse of discretion on the part of the trial judge.
There are numerous requests to charge, and also very numerous exceptions to the charge as given.
The.first, second and third exceptions to the charge read as follows:
“The Court instructs you that, if you find from the evidence that Wilson, the decedent, at the time he was killed, was acting in the capacity of baggage master, under the employ and control, as such baggage master, of the defendant, and, in addition thereto, was acting in the capacity of express messenger for the United States Express Company, under an arrangement between the defendant and the managers of-the express company, and that he was required, by *554 the nature of his employment, to occupy a place in the baggage car and express car, or cars, in accepting his employment as baggage master for the defendant, and express messenger for the express company, he took upon himself the risk incident to the nature of his business, but not the risk resulting from the negligence of the defendant railroad company, in the management of its trains.
“That said Wilson, acting in the capacity of a baggage master, under the control of the defendant, was entitled to the rights of a servant and employe.
“That acting at the same time in the capacity of an express messenger, he was entitled to the rights of a passenger,except the risk incident to the nature of his business.
“That the liability of the defendant to Wilson in the one capacity being that to a servant and employe, and in the other to that of a passenger, both to the same person at the same time, the liability of the defendant to Wilson merged into that of a passenger.”
These three exceptions, we think, raise the vital question in the case; and that is, whether, as a matter of law, the court was justified, under the facts as proven in this case, in charging the jury, in substance, that Wilson was a passenger, and not an employe of defendant railroad company.
It is claimed, on behalf of defendant in error, that the fact that he was both an expressman in the employ of the United States Express Company, and also a baggageman in the employ of the railroad cpmpany; that, under the authorities, as an expressman he was a passenger, and that the further fact that he was an employe of the company as baggageman, did not conrol or lessen in any way his rights as passenger.
And we are cited, in support of that contention, to the 34 Federal Reporter, page 616. The first paragraph of the syllabus reads:
“An expressman and baggageman was killed in a collision while in the discharge of his duty on defendant’s passenger train through the negligence of the employes of defendant’s freight train. Held, they were not fellow servants. ”
*555 He was in the employ of the receivers of the railroad company in both capacities,as expressman and baggageman, and the decision is upon the ground that the employes of the-freight train were not his fellow servants
The case in 11 Wis., 248, is cited. The first paragraph of the syllabus reads:
’‘A messenger of an express company who was entitled to be carried on the freight cars of a railroad, was employed by the superintendent of the road to act as a brakeman for one trip, and while so employed was, by the negligent conduct of the engineer, thrown from the cars and greatly injured, for which he brought an action against the railroad' company.
“Held, that the action would lie, whether he were to be considered as a passenger or employe of the company on that train.”
And on page 259, in the opinion of the court:
“But the most interesting question in the case grows out of the .disputed point, whether the plaintiff should be considered, at the time of the injury, as a passenger or as an employe and servant of the company. There was testimony to the effect that he had been employed for wages,to act as brakeman during that trip. And he was injured while acting-in that capacity. If the jury found that he was so employed, there seems to be no reason why he should not be considered' as having been injured while acting as a servant of the company. There was no impossibility in his acting in the two-capacities during the trip. And if the law applicable to an injury occurring in the one, is different from that applicable to an injury in the other, the law of the case would depend upon the capacity in which he was acting when injured If, as Holton’s express agent, he was a passenger and would' be entitled to recover for a negligent injury, as brakeman he was a servant of the company, and would not be entitled to recover for an injury while acting as such, provided the law be as assumed, that one servant cannot recover for an injury occasioned by the negligence of another.”
They go on, on page 261, to consider the authorities, and especially some Ohio cases, and they hold that even as an *556 employe of the company he was entitled to recover against the company. That the company was liable for the negligence of his fellow servants.
But in 17 Ohio St., 198, the case of The Pittsburgh, Fort Wayne & Chicago Railway Company v, Thomas S. Devinney, the syllabus reads as follows:
“A railway company is not liable in damages to a brakeman on one of its trains, for injuries sustained .by him in a collision of his train with another train of the same company, where the collision occurred by means of the negligence of the conductor or engineer, or both, of such other train, unless it appear that the company was guilty of a want of ordinary care in the selection and employment of an incompetent engineer or conductor, through whose negligence the collision occurred.”
And, in the opinion of the court, on page 210, it says:
“A comprehensive summary of the branch of the law applicable to this question, as settled by cases so uniform and numerous that it is needless to cite them,-in England, New York, Massachusetts, Pennslyvania and the most of the other states of the Union, is thus stated by Read, J., delivering the opinion of the Supreme Court of Pennsylvania, in Caldwell v. Brown, 6 Am. L. Register, N. S., 752:
“ ‘A servant, by entering into his master’s service, assumes all the risks of that service which the master cannot control, including those arising from the negligence of his fellow-servants. In case of an injury to one'servant by the negligence of another,it is immaterial whether he who causes and he who sustains the injury are, or are not, engaged in the same or similar labor, or in positions of equal grade or authority. If they are acting together, under one master, in carrying out a common object, they are fellow servants. The master, indeed, is bound to use ordinary care in providing suitable structures, engines, tools, and apparatus, and in selecting proper servants, and is liable to other servants in the same employment if they are injured by his own neglect of duty. But it makes no difference whether the master is an individual or a corporation; in either case he is responsible to his servants for his own negligence, but not for that of their fellow servants. ’
*557 “But on this general doctrine a single exception has been ingrafted in this state: First, by a divided court, in Little Miami Railroad Company v. Stevens, 20 Ohio, 415, and afterwards by a full court, in C., C. &. C. R. R. Co. v. Keary, 3 Ohio St., 201, and thence forward recognized by this court in subsequent cases. That exception is this, that where one servant is placed in a position of subordination to, and subject to the orders and control of another servant of a common master, and the subordinate servant, without fault of his own, and while in the performance of his duty, is injured through the negligence of the superior servant while acting in the common service, an action lies in favor of the inferior servant so injured, against the master.”
Further along, on page 211, the court say:
“Indeed, in all the books, I am unable to find a single case which would justify the rulings of the court below, with the single exception of Chamberlain v. Mil. & Miss. R. R. Co., 11 Wis., 239,” (it should be 248), “which seems to go to the full extent of holding that a master is in all cases liable for the injury received by one servant, by means of negligence of a fellow servant engaged in a common employment, irrespective of any circumstances of superiority, subordination, rank or grade. In going to this extent, I believe the Supreme Court of Wisconsin stands alone. A majority of this court is unwilling to follow it, believing,as we do, that it would be wrong in itself, and disastrous in its tendencies to every business requiring many hands to prosecute it. Yes, I am unable to see how, if we sustain the rulings of the court below, we can, on any well grounded distinction, stop short of proceeding to the same extreme length,”
The Wisconsin case, referred to in the opinion of the court,is the same Wisconsin case that I have just referred to.
Now, that case in 17 Ohio St. has been cited in very numerous subsequent decisions of the Ohio Supreme Court, and the only possible exception to the rule there laid down is perhaps the case in 38 Ohio St., 389, and in later cases the older rule in 17 Ohio St., 197, has been followed; and such, *558 as wo understand it, has been the law of Ohio up to and until the statute found in 87 Ohio Laws, 149 and 150, the act of 1890. And it seems to us that the trial court followed this 11 Wisconsin case, We think that that 11 Wisconsin case having been expressly disapproved by our own Supreme Oourt, it is the duty of the courts of this state to follow the ruling in the 17 Ohio St. case.
So, we think that the matters of the charge, excepted to by the first, second and third exceptions, are erroneous, and the same is true of the fourth, fifth, sixth, seventh and ninth exceptions, and also of the tenth. As to the eleventh and twelfth exceptions the Court, after reciting at length the' various items of negligence charged in the petition,after telling the jury that it was their duty to find whether those facts existed or not,then followed':
“The court instructs you that, whether or not the defendant was guilty of any or all of the several acts of negligence charged by the plaintiff in his petition, are each and all of them questions of fact, exclusively to be determined by you from a consideration of all the evidence adduced in the case,
“If you find, by a preponderance of the evidence, that defendant was guilty of all or any of the acts of negligence charged by the plaintiff, and were in violation of the rules of the railroad company, you will then consider whether or not they contributed in any manner to, or caused, the death of Wilson. If you find they did, the defendant is liable, and the plaintiff can recover.”
Now, bearing in mind the rule, as we understand it, in Ohio “that the servant cannot recover for the negligence of a fellow servant, not his superior, not over him, not having the right to control or direct him, there were various items of negligence charged in the petition, and recited by the court in this charge, for which the railroad company would not be liable under the 'rule, as we understand it.
Edioard Kibler, for Plaintiff in Error.
J. A. Flory and 8. M. Hunter, for Defendant in Error.
We also think that the fourth, sixth and eighth requests to charge should have been granted. And we reverse the judgment for the errors which I have indicated, and the cause is remanded for further proceeding according to law.