NEW YORK PRACTICE REPORTS. ·5

N. Y., Lake Erie and Western R. Co. agt Supervisors af Delaware Co.

# SUPREME COURT.

## The New York, Lake Erie and Western Railway Company agt. The Board of Supervisors of Delaware County.

*Taxes and assessments — Power of commissioners of highways to assess moneyed and stock corporations for highway labor in a road district other than that in which the property of such corporations is situated — Repeal of statutes — Laws of 1837, chapter 431 — Laws of 1866, chapter 477.*

Repeals of statutes by implication are not to be favored, but on the contrary courts are bound to uphold the former statute, if the two acts can stand together, unless it is expressly repealed, or the intent to repeal is very manifest.

To work a repeal by implication, the intent of the legislature must be very apparent, or the two laws must be so incongruous and repugnant that effect cannot be given to both.

A special law providing for a case, or class of cases, is not to be regarded as partially repealed or amended by a general statute, unless the intention of the legislature to alter that particular law is very obvious.

When it is manifest that the legislature intended the latter statute as a substitute for the former, the latter may abrogate the former, although not entirely repugnant to it.

Applying these rules to the statute of 1837, providing for the assessment of highway labor upon moneyed or stock corporations:

*Held,* that the statute of 1866 was not intended to repeal that of 1837, and that it was not intended as a substitute for it, or any part thereof ; but that it was intended to apply only to this general law as then stood in the Revised Statutes; nor was there any such manifest intent on the part of the legislature to substitute the general provisions of the statute of 1866 for the special ones of the act of 1837, as would work a repeal of the latter by implication.

*Held,* further, that the commissioners of highways of a town have the power to assess a moneyed or stock corporation having property therein, for highway labor to be performed in a road district in such town other than that in which such property is situated.

*Delaware Special Term, September,* 1882.

This is an appeal from a judgment entered in Delaware county November 15, 1882, upon a trial before the court at

special term, dismissing plaintiff's complaint on the merits, and for the recovery of seventy-four dollars and sixty-nine cents costs.

The action was brought to obtain a perpetual injunction restraining the defendants from levying a tax upon the plaintiff's property in the year 1882, to the amount of $120, on account of the plaintiff's failure to work out or commute for eighty days of highway labor, assessed against it in the town of Hancock, and apportioned between road districts No. 16 and No. 41 in that town.

The plaintiffs are the owners of a large amount of real estate in the town of Hancock, consisting of twenty-one and one-half miles of double track, with depots and other appurtenances, which was assessed upon the roll of 1881 at $333,000.

The total assessment upon their property in the town for highway labor in 1882 was 1,100 days; the total assessment of highway labor in the town for the same year, upon all property, was 3,116 days.

The plaintiff's road runs through only eight out of the sixty road districts of the town.

The highway commissioners apportioned the highway labor assessed upon plaintiff's property in 1882 among thirty road districts, besides those through which the railroad runs, allotting sixty days to district No. 16, and twenty days to district No. 41.

The plaintiff commuted for or worked out their highway tax in all the other districts, but refused to work out or commute for its highway tax in these two districts, upon the ground that the highway commissioners had no right to apportion their highway tax among districts other than those through which the road runs.

The overseers of the highways in these districts made the returns required by law to the supervisor of the plaintiff's unworked highway labor on or before October 1, 1882, and the supervisor laid their returns before the defendant's

board at their annual meeting in November, 1882, which was about to include the amount of this highway labor at the rate of $1.50 per day, in the tax levy of the town against the plaintiff and its property, and to make out a warrant for the collection thereof.

The plaintiff then brought this action for a perpetual injunction restraining the defendants from such action, and obtained a temporary injunction during the pendency of this action.

*L. E. Carr*, for plaintiff.

*Maynard & Gleason*, for defendant.

MARTIN, *J.*— The principal and substantially the only question involved in this case is, have the commissioners of highways of a town the power to assess a moneyed or stock corporation having property therein, for highway labor to be performed in a road district in such town other than that in which such property is situated ? By the Revised Statutes as they stood prior to the year 1837, and as they remained until amended in 1876, it was provided that no person being a resident of the town shall be required to work on any highway other than in the district in which he resides, unless he shall elect to work in some district in which he may have land (2 *R. S.*, *p.* 1, *chap.* 16, *title* 1, *sec.* 32). Moneyed and stock corporations were not liable to assessment for highway labor under the Revised Statutes (*Bank of Ithaca* agt. *King*, 12 *Wend.*, 390), consequently the above provision was not applicable to moneyed or stock corporations.

While the law stood thus the legislature, in 1837, passed a statute providing that " in making the estimate and assessment of the residue of the highway labor to be performed in the town after assessing at least one day's work upon each male inhabitant * * * the commissioners of highways shall include among the inhabitants of such town among whom such residue is to be apportioned, all moneyed or stock

corporations which shall appear on the last assessment-roll of their town to have been assessed therein,  *   *   *  *which labor shall be performed in such district or districts as the commissioners of highways of the town shall direct*   *   *   * every such corporation may commute for the highway labor assessed upon it in the same manner, and at the same rate as is allowed by law to individuals, or by paying such commutation to a commissioner of highways of the town, and the commutation money so paid may be expended by the commissioners of highways upon any district or districts in the town, and for that purpose the said commissioners shall be entitled to demand and receive from the overseer to whom any such commutation may have been paid, the whole, or any portion thereof"   *   *   *   (*Chap.* 431, *Laws* 1837).

It was under and by virtue of this statute that the property of moneyed or stock corporations first became liable to assessment for highway labor. This was a special statute, authorizing the assessment of highway labor on a new and distinct class. It not only provides that a new class of property should be assessed, but also that the labor as assessed should be expended in a manner essentially new. This became necessary from the fact that these corporations were possessed of large amounts of property which was thus made subject to such tax, and which was usually located in a single, or at most, in but few districts of the town. The large amount of labor required to be performed by them could not be advantageously expended in the districts where such property was located. Therefore the legislature provided that the labor assessed to such corporations should be performed in such district or districts as the commissioners of highways should direct, conferring upon the commissioners the power to determine in what districts of such towns said labor should be performed.

If the statute of 1837 still remains operative and unrepealed, the commissioners of highways of the town of Hancock had an undoubted right to assess the plaintiff for, and require it

to perform highway labor in any district in that town, whether it had property in that district or not. Does this statute still remain ·operative and unrepealed? The plaintiff insists not. It contends that it has been repealed. While it does not contend that this act has been expressly repealed, still, it insists that subsequent legislation upon this subject has impliedly repealed it. It contends that that result was effected by the passage of chapter 770 of the Laws of 1866, which was as follows : " From and after the passage of this act the highway tax upon any land or property   *   *   *   shall be worked out or commuted for in the district in which said lands or property is situated, and if commuted for, the money shall be paid to the overseer of said district, but this act shall not apply to or affect any county, city, village, town or district where the disposition of the highway tax has been provided for by special enactment.

It must, I think, be admitted that the language of this statute is sufficiently broad and comprehensive to cover the case of a corporation, and that it would have limited the power of the commissioners of highways to assess such corporations for labor to be performed in the district or districts in which their property was situated, if there had been no special statute on the subject. But there was. When this act was passed, the statute of 1837 was still in force. This statute was a special one, applying only to corporations. The statute of 1866 was general. It may be well, before proceeding farther, to examine some of the authorities upon the question of the repeal of statutes by implication, and discover, if possible, what rules should govern us in determining this question.

A somewhat early case upon the question was the case of *Bowen* agt. *Lease* (5 *Hill*, 225), in which it was said, by NELSON, Ch. J., who delivered the opinion of the court in that case : " The invariable rule of construction in respect to the repealing of statutes by implication is, that the earlier act remains in force unless the two are manifestly inconsistent

with each other, or unless in the latest act some express notice is taken of the former plainly indicating an intention to abrogate it. As laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subjects, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. Hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law if the two acts may well subsist together."

*In the Matter of Commissioners of Central Park* (50 *N. Y.*, 497), the late judge ALLEN, in delivering the opinion of the court, said : " The law does not favor a repeal of statutes by implication. To work a repeal by implication the intent of the legislature must be very apparent, or the two laws must be so incongruous that effect cannot be given to both. * * * A special and local statute, providing for a case or class of cases, is not partially repealed or amended as to some of its provisions by a statute general in its terms, provisions and application, unless the intention of the legislature to repeal or alter the particular law is manifest, although the terms of the general act would, taken strictly, and but for the special law, include the case or cases provided for by it (*Caper* v. *Glover*, 4 *Mass.*, 305).

In the case of the *People ex rel.* agt. *Palmer* (52 *N. Y.*, 84), it was held that the repeal of statutes by implication is not favored by the law, and when a later and former statute can stand together, both will stand, unless the former is expressly repealed, or the legislative intent to repeal is very manifest."

In the case of the *People* agt. *Quig* (52 *N. Y.*, 88) it was held " that repeal of statutes by implication is not favored, and only takes place when two acts are so inconsistent that both cannot stand, and then the later act prevails. Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of

an intent by the legislature to effect such repeal; and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end."

*In the Matter of Delaware and Hudson Canal Company* (69 *N. Y.*, 212) it was said "a general law will not in the absence of a very evident intent on the part of the legislature to do so, and which intent must appear by the terms of the act itself, abrogate or change the provisions of a special law. passed for particular cases constituting a class by themselves for which the general laws of the state do not profess to provide."

In *Heckmann* agt. *Pinkney* (81 *N. Y.*, 215) it was said "it is the undoubted rule that repeals by implication are not favored. Where there is no repealing clause in a later statute, and that and a former one can stand together and both have effect, they will generally both be held to be in force. But where a later statute not purporting to amend a former one covers the whole subject, and was plainly intended to furnish the only law upon the subject, the former statute must be held repealed by necessary implication."

From these authorities the following rules may, I think, be safely deduced:

*First.* The repeals by implication are not to be favored, but, on the contrary, courts are bound to uphold the former statute if the two acts can stand together, unless it is expressly repealed, or the intent to repeal is very manifest.

*Second.* That to work a repeal by implication the intent of the legislature must be very apparent, or the two laws must be so incongruous and repugnant that effect cannot be given to both.

*Third.* That a special law providing for a case, or class of cases, is not to be regarded as partially repealed or amended by a general statute, unless the intention of the legislature to alter that particular law is very obvious.

*Fourth.* That when it is manifest that the legislature intended the latter statute as a substitute for the former, the

latter may abrogate the former although not entirely repugnant to it.

Applying these rules to the statute under consideration, and it is very difficult to see how it can be held that the statute of 1866 effected a repeal of that of 1837, when we consider the condition of the law at the time of the passage of the act of 1866.   At that time, by the general law as contained in the Revised Statutes, the property of individuals, firms, &c., was liable to assessment for highway labor, but under such general statute the property of a corporation was not liable.   Corporations were only liable by virtue of the statute of 1837, which was a special statute imposing upon them this tax, and which contained provisions peculiarly adapted to the condition of such corporation and to the situation of their property. Here, then, were two distinct statutes in relation to the assessment of highway labor, one relating to a class only the other general.   Was it the intent of the legislature that the general law of 1866 should apply only to the general law then in existence upon this subject, or was it intended to apply to this special law also ?   I think it was intended to apply only to the general law.   I cannot think the legislature intended to repeal the act of 1837, so far as the same provides that the highway labor assessed upon the property of a corporation may be required to be performed in such district or districts as the commissioners of highways may direct, or that it was intended to provide that corporations should work out their necessarily large assessments within the narrow limits of a single road district, thus rendering their assessments practically; or at least partially, valueless to the town.   Construing the statute of 1866 as applicable only to the general statute and it is in no way repugnant to or inconsistent with the statute of 1837; and thus construed effect is given to both.

I am therefore of the opinion that the statute of 1866 was not intended to repeal that of 1837, and that it was not intended as a substitute for it, or any part thereof, but that it was intended to apply only to the general law as it then stood

in the Revised Statutes. There certainly was no such manifest intent on the part of the legislature to substitute the general provisions of the statute of 1866 for the special ones of the act of 1837 as would work a repeal of the latter by implication.

It is also contended by the plaintiff that chapter 348 of the Laws of 1876 have effected such repeal. I cannot think so. That act was simply an amendment of section 32 of chapter 16 of part 1 of the Revised Statutes; and as we have already seen that statute does not apply to corporations. It was in no way inconsistent with or repugnant to the special statute of 1837 relating to corporations.

From these considerations it follows that the plaintiff's complaint must be dismissed upon the merits.

NOTE.— Affirmed, May general term, 1883, on foregoing opinion (*See* 30 *Hun*, 222). Appeal to court of appeals discontinued March 18, 1884.