CITY OF LANSING *v.* BOARD OF STATE AUDITORS.

STATUTES—OBJECT NOT EXPRESSED IN TITLE—TAXATION OF STATE PROPERTY.

> The provision of Act No. 405, Local Acts 1893, § 14, tit. 10, that the common council of the city of Lansing shall afford fire and police protection to the property owned by the State, and bestow such care and attention upon the streets on which state property is located as may be necessary, and that the board of state auditors shall allow the city such sums as would, in the judgment of the city assessors, be lawfully assessable for like purposes against the property generally in said city, is not within the title, "An act to reincorporate the city of Lansing," and is therefore void, under section 20, art. 4, of the Constitution. HOOKER and MONTGOMERY, JJ., dissenting.

*Mandamus* by the city of Lansing to compel the board of state auditors to allow a claim against the State for affording fire and police protection to its property. Submitted November 19, 1895. Reargued May 6, 1896. Denied December 24, 1896.

In 1893 the legislature passed a local act entitled:

"An act to reincorporate the city of Lansing, in the county of Ingham, and to repeal all acts and parts of acts in conflict herewith."

This act will be found in the Local Acts of 1893, extending from page 1230 to page 1306. Section 14, tit. 10, p. 1270, reads as follows:

"The council shall afford all fire and police protection to property owned by the State, and bestow such care and attention upon the streets, sidewalks, cross-walks, sewers, and drains as the council shall deem necessary to such streets or avenues upon which may be located any of the State's buildings, parks, or grounds. The state board of auditors shall allow the city of Lansing such sum

or sums of money as would, in the judgment of the city assessors, be lawfully assessable for like purposes against the property generally in said city of Lansing. And the auditor general, on the presentation of such account, duly signed, shall draw his order on the state treasurer therefor."

Acting under this authority, the city assessors of Lansing assessed the value of the state property in the city at $1,300,000, and apportioned to the State for police and fire expenses $2,525.90 for 1893, and for 1894 $2,470, making a total of $4,995.90. The relator presented this claim to the respondent, demanding its allowance. The respondent refused to allow it, and the purpose of this petition is to obtain the writ of *mandamus* to compel it.

*Russell C. Ostrander*, for relator.

*Fred A. Maynard*, Attorney General, for respondent.

GRANT, J. (*after stating the facts*). Four objections are raised by the attorney general to this claim:

1. That this provision of the city charter is in violation of section 20, art. 4, of the Constitution, in that no such object is expressed in its title.
2. That the general tax law of the State was passed subsequently to this charter, which act exempts all state property from taxation, and therefore repealed this provision of the charter.
3. That the act reincorporating the city of Lansing was not constitutionally enacted, because it was not read three times in each house of the legislature before its final passage, as required by section 19, art. 4, of the Constitution.
4. That the act is an appropriation of public money for local purposes, and is therefore void under section 45, art. 4, of the Constitution, in that two-thirds of the members of each house did not vote for the bill.

It has been the policy of this State from the beginning to exempt its property from taxation, local and general. I am not aware of any act before passed by the legislature imposing the burden upon the State of assisting municipal corporations financially to support their local govern-

ments. This is taxation pure and simple, and confers the extraordinary power upon the local authorities to assess the state property at any sum they shall deem proper, and then to apportion a certain part of the city taxes to the State. The State has no part or lot in the matter. No provision is made by which any state officer is notified, and can appear to contest the assessed value of the state property or the amount of the taxes, or to protect the interests of the State. That such power is extraordinary is a very mild statement of the case. It is the sole instance ever found upon the statute books of Michigan where private or public property was assessed, and taxation imposed, without giving the owner an opportunity to be heard. Such power is repugnant to every principle of just taxation. The title to the act gives no hint of an intention to confer such power. It is not a common incident to municipal corporations. No better case can be found to illustrate the necessity and wisdom of the constitutional requirement. There is nothing in the title to this act to indicate to the taxpayers of this State or to their representatives in the legislature that the state property is to be taxed, or that its funds are to be appropriated to maintain the local government of the city of Lansing. No one would be bold enough to assert that, if such appeared in the title, it would not have met with opposition. We think this provision of the act is clearly unconstitutional, because the object is not expressed in the title. *Davies* v. *Board of Sup'rs*, 89 Mich. 295.

It is unimportant, in this view of the case, to discuss the other questions.

The writ is denied.

LONG, C. J., and MOORE, J., concurred with GRANT, J.

HOOKER, J. (*dissenting*). I cannot concur with the majority of the court. The legislature, by Act No. 405, Local Acts 1893, passed "An act to reincorporate the city of Lansing, in the county of Ingham, and to repeal all

acts and parts of acts in conflict herewith." Section 14 of title 10 of said act reads as follows:

"The council shall afford all fire and police protection to property owned by the State, and bestow such care and attention upon the streets, sidewalks, cross-walks, sewers, and drains as the council shall deem necessary to such streets or avenues upon which may be located any of the State's buildings, parks, or grounds. The state board of auditors shall allow the city of Lansing such sum or sums of money as would, in the judgment of the city assessors, be lawfully assessable for like purposes against the property generally in said city of Lansing. And the auditor general, on the presentation of such account, duly signed, shall draw his order on the state treasurer therefor."

This section, by its terms, imposes the duty upon the city of providing fire and police protection for state property, and of bestowing care upon the streets, sewers, and walks adjacent to such property. It recognizes that such service is of benefit to the entire State, as it unquestionably is, and provides for the reimbursement of the city from the state treasury. Municipal corporations are the creatures of the State, dependent upon it for existence, vested with certain privileges, and charged with certain duties of government, for the benefit of the State as well as the locality. They are agencies of government, and may be required to do and pay for many things which are of state as well as local interest, such as building and repairing roads, providing jails and prisons for local offenders against the laws of the State, as well as the ordinances of the city. How far a city may be required to defray expenses for the benefit of the State may be questionable, as a perusal of the following cases will show: *State* v. *Haben*, 22 Wis. 660; *Board of Sup'rs* v. *Weider*, 64 Ill. 427; *Burr* v. *City of Carbondale*, 76 Ill. 455. But where the locality has a special interest, as well as the general interest in which the State at large shares, and the subject is immediately related to its powers and privileges, the legislature may, at least, permit it to assume obligations and incur expenses for such

objects. *Merrick* v. *Inhabitants of Amherst,* 12 Allen, 500; *Marks* v. *Trustees of Purdue University,* 37 Ind. 155; *Hasbrouck* v. *City of Milwaukee,* 13 Wis. 37; *Gordon* v. *Cornes,* 47 N. Y. 608; *Bay City* v. *State Treasurer,* 23 Mich. 499; *Kirby* v. *Shaw,* 19 Pa. St. 258; *Callam* v. *Saginaw,* 50 Mich. 10. Without determining the validity of a compulsory act of this character, when assailed by the city upon which it is imposed, we have no doubt of the validity of an arrangement by which services may be rendered by the city, and paid for by the State, for their mutual convenience. Undoubtedly, the legislature may provide a fire apparatus and service, and police, for its buildings, at the expense of the State. The city has provided itself with the appliances and means of furnishing the service, and the arrangement contemplated by section 14 may be mutually economical and desirable.

The act is attacked by the board of auditors, who refuse to pay the assessment made in accordance with section 14 of the charter. Several questions are raised by this record: It is alleged—

1. That the provision is one appropriating money, and was not passed by the requisite two-thirds of the members elect.

2. That it is not within the title of the act.

3. That the general tax law passed at the same session, 18 days after the charter was passed, repealed section 14, inasmuch as it provided that the state property should not be taxed.

Section 45, art. 4, of the Constitution, provides: "The assent of two-thirds of the members elected to each house of the legislature shall be requisite to every bill appropriating the public money or property for local or private purposes." It is not applicable to this case, because, if this section can be said to appropriate money, it is not for local or private purposes, but for the benefit of the State at large.

Is the provision within the title? The claim that it is not seems to rest upon the fact that the section provides for a charge against the State. When we consider that the State creates cities for its own purposes, and charges them with duties, I think there is little reason for saying that all matters connected with the affairs of the State, which may lawfully be confided to the city, are not covered by the title, unless we are to say that the title must contain a complete index to the provisions of the act. Innumerable powers and privileges are given by such acts. Boards and courts, commissioners, public officers, etc., are provided for under similar titles, and they are sustained. It is not the first time in the history of the State that legislation of a similar character has been indulged in. In the year 1857, in an act entitled "An act to revise the charter of the city of Detroit," provision was made for the erection of houses of correction by said city, to which offenders against the laws of the State might be sent from the various counties of the State; and it was provided that—

"All expenses attending the confinement of any person sentenced to be committed to any workhouse or house of correction of said city, for any offense against the general laws of this State now or hereafter punishable by imprisonment in the state prison, shall be paid by the state treasurer quarter yearly, on the certificate of the city controller that such expenses have been incurred." Act No. 55, Sess. Laws 1857, p. 107.

Again, under an act entitled "An act to establish the Detroit House of Correction, and authorize the confinement of convicted persons therein," provisions were made by which the state prison inspectors might contract for the keeping of certain prisoners in said house of correction. 2 How. Stat. chap. 344. Under these and similar acts, persons have been confined in said house of correction, at the expense of the State and the several counties, ever since; and we are unable to learn that the validity of the

acts has been questioned.   I think that the point is not well taken.   *People* v. *Pond,* 67 Mich. 98; *People* v. *Gobles,* Id. 475; *Hargrave* v. *Weber,* 66 Mich. 59; *Boyce* v. *Sebring,* Id. 210; *Board of Sup'rs* v. *Auditor General,* 65 Mich. 408; *Tice* v. *Bay City,* 78 Mich. 209.

The remaining question relates to the effect of the general tax law of 1893.   This act provided a general rule for the assessment and collection of taxes, and in express terms repealed the general tax law of 1891, and "all other acts and parts of acts in any wise contravening any of the provisions of this act."   Act No. 206, Pub. Acts 1893, § 126. Under the head of "Real Estate Exemptions" it provides that "all public property belonging to the United States, and all public property belonging to the State of Michigan," etc. (section 7), shall be exempt from taxation. Was section 14 of the local act, reincorporating the city of Lansing, repealed by this provision?   If this latter act is to receive a strict and literal construction, it repeals section 14; but that is not necessary, and both laws may stand together, if such shall be shown to have been the legislative intent.   The rule that statutes are to be interpreted in the light of, and with reference to, others *in pari materia,* has additional weight when applied to acts passed at one and the same session.   *Black* v. *Scott,* 2 Brock. 325; *State* v. *Rackley,* 2 Blackf. 249; *Carver* v. *Smith,* 90 Ind. 227; *State* v. *Dickinson,* 20 Miss. 579; *Simpkins* v. *Ward,* 45 Mich. 559; *Joy* v. *Thompson,* 1 Doug. 373; *Willard* v. *Longstreet,* 2 Doug. 172; *Malonny* v. *Mahar,* 1 Mich. 26; *People* v. *May,* 3 Mich. 598; *Galpin* v. *Abbott,* 6 Mich. 17, 34; *People* ·v. *McKinney,* 10 Mich. 54, 84; *Whipple* v. *Saginaw Circuit Judge,* 26 Mich. 342; *Reithmiller* v. *People,* 44 Mich. 280; *Turnbull* v. *Lumber Co.,* 55 Mich. 387.   In *Cain* v. *State,* 20 Tex. 355, it was held that the enactment of a Criminal Code, repealing all other laws as to crimes, should be construed not to repeal, but to leave standing side by side with it, a license law with penalties passed at the same session.   See, also, *People* v. *Jackson,*

30 Cal. 427; *Chandler* v. *Lee*, 1 Idaho, 349; *Nazareth Literary & Ben. Inst.* v. *Com.*, 14 B. Mon. 266; *State* v. *Bishop*, 41 Mo. 16; *Riggs* v. *Brewer*, 64 Ala. 282. And see *Smith* v. *People*, 47 N. Y. 330, where it is said:

"Words, absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time, and to which they relate or are applied. A literal interpretation of words in most common use, and having a well-defined meaning as ordinarily used, would not unfrequently defeat, rather than accomplish, the intent of the party using them. * * * A clause in a statute purporting to repeal other statutes is subject to the same rules of interpretation as other enactments, and the intent must prevail over literal interpretation. One part of an act of the legislature may be referred to in aid of the interpretation of other parts of the same act. So, in case of doubt or uncertainty, acts *in pari materia*, passed before or after, and whether repealed or unrepealed, may be referred to, in order to discern the intent of the legislature in the use of particular terms; and within the same rule, and the reason of it, contemporaneous legislation, although not precisely *in pari materia*, may be referred to for the same purpose. Statutes *in pari materia* relate to the same subject, the same person or thing, or the same class of persons or things, and are to be read together, for the reason that it is to be implied that a code of statutes relating to one subject are governed by the same spirit, and are intended to be harmonious and consistent. They are to be taken together as if they were one in law, as one statute."

This rule of construction is reinforced by the rule, "*Generalia specialibus non derogant.* The presumption is that a general later law does not abrogate an earlier special one by mere implication. The general law is usually presumed to have only general cases in view, and not particular ones, which have been already provided for by the special act. Having already given its attention to the particular subject, and provided for it, the legislature is reasonably presumed not to intend to alter that special legislation by a subsequent general

enactment; and the latter is read as silently excluding from its operation the cases which have been provided for by the special one. *Thorpe* v. *Adams*, L. R. 6 C. P. 125; *Reg.* v. *Champneys*, Id. 384; *Seward* v. *The Vera Cruz*, 10 App. Cas. 68; *New York, L. E. & W. R. Co.* v. *Board of Sup'rs of Delaware Co.*, 67 How. Prac. 5; *Village of Hyde Park* v. *Oakwoods Cemetery Ass'n*, 119 Ill. 141; *State* v. *Mills*, 34 N. J. Law, 177; *Brown* v. *County Com'rs*, 21 Pa. St. 37; *Cumru Tp.* v. *Berks Co. Poor Directors*, 112 Pa. St. 264; *Gage* v. *Currier*, 4 Pick. 399; *Fitzgerald* v. *Champneys*, 2 Johns. & H. 54; *Crane* v. *Reeder*, 22 Mich. 322, 334, and cases cited. This rule is held to have an added force when the two acts were passed at the same session, in the following cases: *Town of Ottawa* v. *La Salle Co.*, 12 Ill. 339; *McFarland* v. *Bank*, 4 Ark. 410. It is also said that the fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of this rule of construction. *Brown* v. *Mullica Tp.*, 48 N. J. Law, 447. In view of these authorities, I am of the opinion that the two acts may be reasonably said to have been intended to stand together, and that the writ should issue as prayed.

Montgomery, J., concurred with Hooker, J.